Slack *v.* Rees.

GEORGE W. SLACK et al., appellant,

*v.*

ELIZA E. REES, respondent.

[Submitted December 8th, 1903.   Decided November 14th, 1904.
Filed November 15th, 1904.]

1. A gift, made by a father of advanced years and in infirm health, to a daughter who is furnishing him care and service, made necessary by his physical condition, is, presumptively, the result of undue influence; and, in a suit brought to have a gift, made under such conditions, declared invalid for this reason, the burden of proving absence of undue influence rests upon the donee.

2. The rule that a deed of gift containing no power of revocation will be set aside where a relation of trust and confidence exists between donor and donee, and the donor has had no independent advice as to the effect of the deed upon his own interest in the subject-matter of the gift, applies to an irrevocable conveyance made by an aged and infirm father, without independent and competent advice, to a daughter with whom he lives and upon whose care his well being depends.

On appeal from a decree in chancery advised by Vice-Chancellor Reed.

*Mr. Aaron V. Dawes,* for the appellants.

*Mr. Edwin R. Walker,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The two complainants and the defendant are the only children and heirs-at-law of George H. Slack, deceased, who died on the 13th day of August, 1902, at the age of sixty-eight years. On the day before his death he executed a deed to his daughter, Mrs. Rees, conveying to her two houses and lots in the city of Trenton. He owned no other real estate, and his personal

estate was insufficient for the payment of his debts. His sons seek to have the conveyance set aside and declared void upon the following grounds: That their father lacked mental capacity to make the deed; that it was the product of undue influence exercised by their sister upon him; and that, in making the deed, he did not have the benefit of competent and independent advice.

The deceased, for a number of years before his death, suffered from the disease known as locomotor ataxia. By the progress of the disease his physical powers became gradually weakened, and his mental powers also were somewhat affected. But although his mind was somewhat weakened, we fully concur in the conclusion of the learned vice-chancellor who heard the case below, that he retained sufficient mental capacity to dispose of his property.

The second ground of attack upon the conveyance—that it was the product of undue influence—presents a more difficult question. For a period of nearly three months prior to his death he was an inmate of his daughter's home. He was, during all that time, dependent upon her for the care and service which a man in his weakened physical and mental condition constantly requires. The normal relation of parent and child, as it had existed in earlier years, had been reversed, and the daughter had become the guardian of the father. In this situation the law presumes that a gift made by the parent to the child is the product of undue influence, and casts upon the latter the burden of proving the contrary. It was considered by the vice-chancellor before whom the case was tried, that she had discharged this burden. After a careful review of the testimony we are not one as to the soundness of this conclusion. A decision upon this point in the case, however, is rendered unnecessary, as we conclude that the conveyance must be set aside, because, in making it, the donor did not have the benefit of competent and independent advice as to its effect.

That the absence of such advice will invalidate a deed of gift, which contains no power of revocation, where a relation of trust and confidence exists between the donor and donee, is not denied, and, indeed, it was so held by the vice-chancellor. He

seems to have considered, however, that such relationship was not shown, unless it was made to appear that the donee occupied such a dominant position toward the donor as to raise the presumption that the latter was without power to assert his will in opposition to that of the donee. But this is not the situation. The rule has a much broader sweep. Its purpose is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee as it is to afford him protection against the consequences of voluntary action on his part, induced by the existence of the relationship between them, the effect of which, upon his own interests, he may only partially understand or appreciate. The following citations from our own decisions make this plain: "In all transactions between parties occupying relations, whether legal, natural or conventional in their origin, in which confidence is naturally inspired, or, in fact, reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed, and who has acquired an advantage, to show affirmatively not only that no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, *but that it was well understood*." *Hall* v. *Otterson, 7 Dick. Ch. Rep. 528; S. C.,* on appeal, *8 Dick. Ch. Rep. 695.* "Where parties hold positions in which one is more or less dependent upon the other, courts of equity hold that the weaker party must be protected, and they set aside his gifts if he had not proper advice, independently of the other." *Haydock* v. *Haydock, 7 Stew. Eq. 575.* "The rule to be gathered from the English and American cases is that the burden of proof is cast upon the donee to establish that the donor fully appreciated what he was doing, or, at all events, in the doing had the benefit of disinterested and competent advice." *Coffey* v. *Sullivan, 18 Dick. Ch. Rep. 302.*

The present case is a marked example of the wisdom of the rule. The deed was made by Mr. Slack almost immediately after a prostrating attack, which was a phase of the disease from which he was suffering. Neither of the physicians who were in attendance upon him expected the attack to be fatal. As soon as he was sufficiently recovered from its violence to

permit it, an attorney, who had previously been employed by him in other matters, was sent for, and, upon his arrival, Mr. Slack stated to him that he wished him to draw a deed, conveying to Mrs. Rees certain property which he owned in Trenton, and asked the attorney whether he had better make a will or a deed. He was advised by the attorney that it would be better to make a deed, and did so. No power of revocation was reserved in the deed, and its effect, if valid, was to practically strip him of his whole estate, for his personal property, as has already been stated, was insufficient to pay his debts. If the opinion of his physicians, as to the effect of the attack upon him, had turned out to be accurate, he would, for the rest of his life, have been a dependent upon the charity of others, except so far as a pension which he received from the national government would have sufficed to support him. From his inquiry made of the attorney, whether it would be better for him to make a will or a deed, it seems quite probable that he considered the one would be no more effective than the other to presently deprive him of all further interest in the estate to be embraced in the instrument which he proposed to execute. It is difficult to understand the failure of the attorney to advise Mr. Slack as to the effect of such a deed as was executed. He not only should have done this, but, in the language of Vice-Chancellor Malins, in *Coutts* v. *Ackworth, L. R. 8 Eq. Cas. 558,* he should have insisted upon inserting in it the reservation to the donor of the power to revoke the gift, unless Mr. Slack had distinctly refused to have it done.

The decree will be reversed, and the record remitted to the court of chancery, with instructions to that court to enter a decree setting aside the conveyance in question and declaring it to be null and void.

*For reversal*—The Chief-Justice, Dixon, Garrison, Fort, Pitney, Swayze, Bogert, Vredenburgh, Green, Gray—10.

*For affirmance*—Vroom—1.