LLEWELLYN JAMES, respondent,

*v.*

T. OWEN ALLER et al., appellants.

[Submitted March 25th, 1905. Decided November 20th, 1905.]

A completed gift, absolute in its terms, which is made by a father to his child, with a full understanding by him of its effect, and when the normal relation of parent and child continues to exist between them (*i. e.*, when the father, not the child, occupies the dominant position), cannot be revoked by him, even though the gift plainly appears to have been improvidently made.

On appeal from a decree in chancery advised by Vice-Chancellor Emery, whose opinions are reported in *66 N. J. Eq.* (*21 Dick.*) *52, 69.*

Mr. *George H. Large* and Mr. *Paul A. Queen,* for the appellants.

Mr. *Benjamin W. Ellicott,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The nature of the controversy between the parties and the facts submitted at the hearing are very fully set out in the opinion of the learned vice-chancellor before whom the case was tried. It is unnecessary to state them in full. Briefly, the following case is presented: In the spring of the year 1880 Llewellyn James, the complainant, conveyed to his children, defendants herein, his homestead property in the village of High Bridge, reserving to himself the right to occupy it so long as he should desire to do so. At the same time he assigned to them two mortgages aggregating $4,200. In the autumn of the year 1881 he gave to his daughter, Lydia Aller, certain notes and other securities amounting to $4,000. In making these several gifts he reserved to himself no power to revoke them. In June, 1902, he filed his bill in this cause seeking to annul these several transactions. In it he rested his right to relief as to the conveyance of his homestead and the assignments of the mortgages upon the ground that he was induced to sign these papers by Mrs. Aller and her husband, through false representations made by them to him as to the character thereof, and without any knowledge of their real nature. His contention as to the notes and other securities given to Mrs. Aller in the autumn of 1881 is that they were delivered to her to hold in trust for him. The defence set up was that the conveyance of the homestead and the assignment of the mortgages were made by the complainant to his children as a gift at the time of his second marriage, for the purpose of making pro-

vision for their support; and that the notes and other securities given by him to Mrs. Aller in 1881 were not intended by him to be held by her for his benefit, but that his purpose, expressed at the time, was that they were delivered to her as an absolute gift for herself and her sisters.

A mass of testimony was taken in the case, from a consideration of which the learned vice-chancellor reached the conclusion that in making the conveyance of the homestead and the assignments of the mortgages the complainant thoroughly understood the nature of the papers which he was signing; that his purpose in executing these several papers was to make a gift to his children of the property which they transferred; that no influence whatever was exerted upon him by his children to induce him to make this gift, and that he made the transfers voluntarily and deliberately, after consultation with his counsel. He held that a gift made by a father to his children, under these conditions, when not unreasonable in amount (and this he considered was not), was irrevocable to the donor, and that the complainant was not entitled to relief upon this part of the case.

As to the transaction of the autumn of 1881, the vice-chancellor concluded from the proofs that the notes and other securities were given by the complainant to his daughter, Mrs. Aller, for the benefit of herself and her sisters; that the gift was made freely by the father to carry out his wishes expressed at the time, and without the exercise of any influence on the part of the daughters, and that no power to revoke the gift was reserved by him. The vice-chancellor considered, however, that the gift was improvident, because, by making it, the complainant divested himself of all the property then owned by him, and held that for this reason it was inequitable for the defendants to retain this gift, after a demand for its return made upon them by the complainant, and decreed that they should pay back to him the amount thereof, less certain moneys which had been advanced by them to him prior to the time of the filing of the bill. From that portion of the decree which annuls the gift of 1881 the defendants have appealed.

Mr. James, at the time of making the gift which was set

aside, was, as is stated in the opinion of the vice-chancellor, in the prime of life, and was steadily earning from $100 to $300 a month, and sometimes as much as $500. It may well be doubted whether a man in such a situation necessarily acts improvidently in giving to his children the property which he has then accumulated. But assuming this to be so, it does not, in our view, afford any ground for declaring such a transaction voidable at his option. The law permits anyone to dispose of his property gratuitously, if he pleases, provided the rights of creditors are not injuriously affected thereby. He may, if he sees fit, reserve to himself the right to revoke his gift: or, if he desires, he may make the gift absolute and irrevocable, and his *power* in this regard does not depend upon the providence or improvidence of his act. It has, indeed, frequently been declared that where a relation of trust and confidence exists between the donor and the donee, and the donee occupies the dominant position, the fact that the gift is improvident is of great importance in determining whether it was the voluntary, well-understood act of the donor, and that the failure of the donor to reserve to himself a power of revocation will vitiate the transaction. The two cases referred to by the vice-chancellor in support of his conclusion that the gift should be set aside are of this character. In *Garnsey* v. *Mundy*, 24 *N. J. Eq.* (*9 C. E. Gr.*) 243, the donor was a young woman who had just reached her majority. The gift was to her mother, in trust for the donor's child. It was made at the solicitation of the mother, without any independent advice to the daughter, and without the reservation to her of any power of revocation. The proofs made it clear that the donor did not understand the provisions of the deed which she executed, nor their effect; that she did not suppose the conveyance would place the property beyond her reach and control, and that the donee supposed that the gift was, and intended that it should be, revocable. In *Powell* v. *Powell, L. R. 1 Ch. Div.* 243 (*1900*), the donor was a young woman who had attained the age of twenty-one years shortly before making the deed which was set aside. The donee was her stepmother. The gift was held to be the result of strong pressure brought to bear upon the donor by the donee. The

underlying distinction between cases like those just referred to and the present one, as it seems to us, is the relationship existing between the parties. Where no relation of trust and confidence exists between the donor and donee, or where, when such relation does exist, the donor, and not the donee, occupies the dominant position, the rule laid down in those cases has no application, and a gift absolute in its terms, made voluntarily and with a full understanding of its effect, cannot be revoked by the donor, either by his own act alone or with the aid of a judicial tribunal. Such is the case now before us. The respondent, in the prime of life, as has already been stated, in the full possession of his faculties, as the case shows, and without the exercise of any influence over him by his children, made this gift to them. At that time no conditions existed to justify the conclusion that the original relation existing between parent and child (*i. e.,* a relation where the parent occupies the dominant position) had been reversed, and that the children then occupied that position. His purpose, at the time of making the gift, was to make them the absolute owners of the property donated. It was his to dispose of as he saw fit. The gift was intended by him to be, and was, irrevocable. That being so, he has no legal right to now require the return of the property with which he then parted.

The portion of the decree appealed from should be reversed, and a decree entered in conformity with the view herein expressed.

FORT, J. (dissenting).

I am unable to agree with the view taken by the majority of the court in this case.

I agree with the opinion of Vice-Chancellor Emery in its entirety, and vote to affirm for the reasons given by him in the court of chancery.

Judge Vroom concurred in this dissent.

*For affirmance*—FORT, VROOM—2.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, GARRETSON, PITNEY, SWAYZE, BOGERT, GREEN, GRAY—9.