The complainant is an Italian, now of the age of fifty-nine. He left Italy in 1888, and after a stay in Canada he came to Philadelphia. In each of these places he worked as a common laborer. In 1897 he came to New Jersey and bought brush land in the neighborhood of Vineland, about thirty acres of which he has cleared and has built a small house and some farm buildings, all of a very inferior character.
He was married in Italy, and some time after his arrival his wife joined him. By that marriage there were born eight children, of whom five are still living. None of the children are living with him. His wife died in 1914, and from that time until 1922 he lived alone on his property. On the 11th day of February, 1922, he was introduced to Rose Caranti *Page 183 
by a "matchmaker" in Brooklyn, New York, and immediately married her. In a day or two they came to Vineland, but they remained at a neighbor's (John Ardito's) house for about a week. She then went to his home. She secured from him about $800 in money, evidently by threatening to refuse him conjugal relations.
The next night, after she obtained the money (about the 1st of March, 1922), she left his home and returned to Ardito's house, and remained eight months. At that time, ascertaining from Ardito that his wife was at his (Ardito's) house, Graziano called to see her. This interview and others following it resulted in the complainant, as he says, agreeing to make a will giving to her son (Lanuto), the defendant, his property, upon the condition that he (Lanuto) support him during his life. Lanuto came from New York, and a visit was made by Graziano, his wife and Lanuto to the office of one Frank DeLuca, a member of the bar of this state, who acted "as counsel for all three." Graziano did not have his title deeds with him at that time, and left to get his papers and returned several days later, when a deed was drawn and executed by complainant and wife to Lanuto, conveying all his property, but reserving the use to Graziano and his wife for the terms of their natural lives. This deed was acknowledged before DeLuca, and was held by him without record until January 9th, when it was recorded.
On January 18th, Graziano and his wife called at DeLuca's office and a quit-claim deed was drawn and executed by Graziano and his wife to Lanuto, in which it was stipulated that "the specific intent of this quit-claim deed is that grantors release and surrender said life use or estate in the last-mentioned deed reserved, and convey all their right, title and interest in said premises to the grantee, to the end that title to the same shall be vested absolutely and in fee-simple in the said Natale Lanuto, without any restrictions or reservations whatsoever." The acknowledgment of this deed was also taken by DeLuca. This deed was not recorded at once, but was held until the 14th day of February, 1923. Graziano insists that at all times he understood he was making a "testament" *Page 184 
— that is, giving the property to Lanuto after his (Graziano's) death, upon condition that Lanuto support him during his lifetime.
On the 11th day of February, 1923, according to the file in a proceeding for divorce filed by Graziano against his wife, she left him, and on June 25th, 1923, entered into a bigamous marriage with one Frank Berenato. A decree nisi was entered on June 26th, 1924.
Lanuto stayed a short time at the farm and then returned to New York. Graziano remaining on the premises, where he has since lived.
This case comes within the rule as laid down in Slack v.Rees, 66 N.J. Eq. 447 (at p. 448): "That the absence of such [competent and independent] advice will invalidate a deed of gift, which contains no power of revocation, where a relation of trust and confidence exists between the donor and donee, is not denied, and, indeed, it was so held by the vice-chancellor. He seems to have considered, however, that such relationship was not shown, unless it was made to appear that the donee occupied such a dominant position toward the donor as to raise the presumption that the latter was without power to assert his will in opposition to that of the donee. But this is not the situation. The rule has a much broader sweep. Its purpose is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee as it is to afford him protection against the consequences of voluntary action on his part, induced by the existence of the relationship between them, the effect of which, upon his own interests, he may only partially understand or appreciate." The following citations from our own decisions make this plain: "In all transactions between parties occupying relations, whether legal, natural or conventional in their origin, in which confidence is naturally inspired, or, in fact, reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed, and who has acquired an advantage, to show affirmatively not only that no deception was practiced therein, no undue influence used, and that all was fair, *Page 185 
open and voluntary, but that it was well understood." Hall v.Otterson, 7 Dick. Ch. Rep. 528; S.C., on appeal, 8 Dick. Ch.Rep. 695. "Where parties hold position in which one is more or less dependent upon the other, courts of equity hold that the weaker party must be protected, and they set aside his gifts if he had not proper advice, independently of the other." Haydock
v. Haydock, 7 Stew. Eq. 570. "The rule to be gathered from the English and American cases is that the burden of proof is cast upon the donee to establish that the donor fully appreciated what he was doing, or, at all events, in the doing had the benefit of disinterested and competent advice." Coffey v. Sullivan, 18Dick. Ch. Rep. 302.
In Post v. Hagan, 71 N.J. Eq. 234, Mr. Justice Garrison, in delivering the opinion of the court of errors and appeals, said: "Proper independent advice, in this connection, means that the donor had the preliminary benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was, furthermore, so disassociated from the interests of the donee as to be in a position to advise with the donor impartially and confidentially as to the consequences to himself of his proposed benefaction."
Consideration of the testimony can leave no doubt of the domination of this wife over the mind of the husband. Nor can there be any doubt but that that domination was sufficient and actually was the cause of the deed to her son.
Did Graziano have such competent and independent advice? It is clear he did not.
Mr. DeLuca, the attorney who drafted the deed, testifies: "I was acting as counsel for Graziano, for his wife, and for Lanuto. They came there at the same time."
When asked the question, "You represented Frank Graziano?" he answered, "I did, most assuredly." This was flatly denied by Graziano.
There is no testimony indicating that he (DeLuca) gave Graziano any advice except in the presence of the wife, Rosa. DeLuca states, however, in answer to the question, "Did not you regard this as a rather improvident thing for him to do, *Page 186 
to deed away all his property?" "Well, candidly, yes, sir." * * * "Yes, and I thought each and every time that he came there I criticised him severely, to tell the honest truth, and I explained it to him, that he was very foolish to do it," and further, that he "almost refused to draw the papers." He produced a series of memoranda in reference to this transaction, the first of which is one made by him as to what he (Graziano) wanted when he called the first time, and reads: "Francesco Graziano, Rose Graziano, his wife, to Natale Lanuto, of Brooklyn, one dollar and other consideration of value, reserving, however, the life interest to grantors."
His next memorandum was dated December 19th, 1922. "Frank Graziano and wife called to have deed drawn." On this date the deed was drawn, executed and acknowledged. DeLuca said he explained it (the deed) to him thoroughly, "in fact I got him to sign this here statement."
"This is to show that on December 19th, 1922, personally came Francesco Graziano and Rosa Denaro Graziano, his wife, of Landis township, Cumberland county, New Jersey, who declare that it is their bona fide intention to convey their farm property, consisting of about fifty acres of land with the buildings thereon, to Natale Lanuto, which property is better described in the four deeds presented to this office by said Graziano and Rosa, his wife, and a new deed drawn, this day, for four plots of land and premises in the name of the said Natale Lanuto, and send for record in the respective counties wherein the said lands are situate.
"The said Francesco Graziano and Rosa, his wife, requested that this property is conveyed to said Lanuto subject to the life use of the said Graziano and wife; that said property not to vest unto the said Lanuto until the death of said Graziano and Rosa, his wife.
"The said Francesco Graziano and Rosa, his wife, both declare that it is their voluntary act and deed for said Lanuto to have their property after their death.
 "[Signed] FRANK DELUCA. FRANCESCO GRAZIANO, her ROSA DENARO X GRAZIANO." mark
On the next day Mrs. Graziano called and said "to hold the deed — not to send for record until her son came from Brooklyn," On January 2d 1923, Graziano and his step-son *Page 187 
called and requested the deed to be recorded. This appears to be the only call by Graziano at DeLuca's office unaccompanied by Mrs. Graziano.
A further memorandum appears on January 18th, 1923: "Both called and ordered quit-claim drawn, but not to record until further orders. Lanuto gone to Brooklyn to get his family."
The quit-claim deed was drawn, executed and acknowledged by Graziano and his wife, and they signed the following statement:
"VINELAND, N.J., January 18th, 1923.
"This is to show that Francesco Graziano and Rosa Graziano, his wife, personally came before me and declared that they have sold their property consisting of about fifty acres of land, with buildings thereon, to Natale Lanuto, their son, by deed dated December 19th, 1922, which deed is now in the clerk's office of Atlantic county, New Jersey, reserving, however, their life use and interest to said premises. Now, therefore, the said Francesco Graziano and Rosa, his wife, have mutually agreed to quit-claim their rights and interest which they reserved on said premises by virtue of said deed, in order that said Lanuto may have clear title to said premises, and that he may do as he shall see fit with said premises. It is plainly understood that we do understand what we are now doing, that we are giving up all our rights, titles and interest to the fifty acres, more or less, which we have reserved for the life of each of us.
"We further say that it is our voluntary act and deed for said Lanuto to have a clear title to said premises and that he shall, if he sees fit to, sell or dispose of the same free and clear of our interest.
 "Signed in the presence of "[Signed] GIOVANI ARDITO, [Signed] FRANK GRAZIANO, FRANK DELUCA. her ROSA X GRAZIANO." mark
Graziano and his wife signed the following on February 2d 1923:
"You are hereby authorized and directed to send the quit-claim deed which my wife and I executed to my step-son Natale Lanuto, in which deed we relinquish all our rights, title and interest which we hold as life tenants. We have come to an amicable agreement with said step-son, Lanuto, and, therefore, you are permitted to send the deed for record.
 "[Signed] FRANCESCO GRAZIANO, her ROSA X GRAZIANO." mark *Page 188 
The quit-claim deed was sent for record.
At that time application was made to DeLuca for a loan of $500, to be secured by a mortgage upon the property, and a mortgage was prepared in DeLuca's office, bearing that date, and executed by Natale Lanuto and Leonorda, his wife, and Graziano and his wife. The acknowledgment was taken by Thomas DeLuca, a son of Frank DeLuca. Of the consideration of the mortgage, $30 was delivered to Lanuto on that day, by check to Lanuto and Graziano, and endorsed by both, and $30 to Rosa Graziano. Final settlements was made on February 10th, 1923, by giving Lanuto $340 in cash and a bill for $100 for services in the conveyances.
There is a conflict as to how this money was distributed — Graziano denying he had received any of it.
Mr. DeLuca explains why he was so particular in making all these memoranda, by saying: "Well, I used every precaution possible for the reason, if the court wishes to know, I will explain. Years ago I had almost a similar case to this * * * I was severely criticised * * * and I was cautious."
An examination of these memoranda emphasizes the testimony of DeLuca, that they were made for his protection, and that they add little, if any, proof of advice to Graziano.
It is evident that DeLuca did not give, nor is there any evidence that any other person gave Graziano, that "proper, independent advice, or that he had the preliminary benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interest of the donee as to be in a position to advise with the donor impartially and confidently as to the consequences to himself of his proposed benefaction."Post v. Hogan, supra.
A decree will be advised setting aside the conveyances in question.
I will hear counsel upon the question of referring the matter to a master to ascertain the amount, if any, due Lanuto for payment of taxes or otherwise. *Page 189