This is an action to set aside a deed given by complainant to her father-in-law for real estate in Nutley, New Jersey, for seventy shares of stock in building and loan associations, moneys in various banks, bank pass books, life insurance policies, corporation stock, household property and an automobile. Complainant, of German descent and a stranger in Nutley, married, on September 30th, 1925, Michael Lambiase, an Italian. She could neither speak nor understand the Italian language. On October 10th, 1926, the husband was taken ill and died at the Newark City Hospital shortly after. The wife became the owner of the property above mentioned. The real estate had been purchased on October 2d 1926. The husband's body was removed to the home of *Page 100 
his parents, where the funeral took place on October 14th. The widow, being a stranger in Nutley, remained in her father-in-law's house until a few days before the filing of the bill. Whenever she left the house she was accompanied by some member of her father-in-law's family. On the day after her husband's funeral her father-in-law took her to a lawyer's office, where she executed a deed for the real estate to him; a few days later she executed a bill of sale for the automobile to her brother-in-law, and a few days thereafter transferred all her remaining personal property to her father-in-law. Her husband's family took possession of all her husband's property and hers and locked it up in their safe. After the institution of this suit all the property was returned to her save the real estate and the automobile. Complainant claims these transfers were made under duress and without permitting her the benefit of independent advice. Defendants claim that she voluntarily divested herself of every particle of property, real and personal, which she possessed, and it is legally theirs, although they paid no consideration whatever. Why, then, did they of their own volition, after suit was started, return all the property save the real estate and the automobile? Let us see what the evidence discloses. Joseph, the brother-in-law, was always at the house. She could not drive the car and he knew it. He, therefore, offered to drive her about and did so. She says, and he admits, that he told her that in order to drive her in her own car she would have to give him a bill of sale "in order to run the car." She knew nothing about automobiles. He admits he had driven a car before and never had possessed a bill of sale in order to drive one. On this theory she signed the bill of sale and he immediately had it recorded, although this is not necessary. The statements he made to the widow were false and he knew they were false. She relied upon these representations. His statement that she intended the car as a gift in remembrance of his dead brother seems to me highly improbable in view of his admissions to which I have alluded.
Second, as to the real estate. The deed was made the day after the funeral. At the house of the father-in-law, the *Page 101 
body of her husband being unburied before her, surrounded by his relatives, whose language she could scarcely understand, she was induced to divest herself of all her possessions. The conversations were all "in the room where her husband was laying" (dead). I cannot conceive of a situation where a woman would be more in need of independent advice. I cannot imagine anything more brutal than to persuade a distracted woman in the very room where her husband's dead body was lying to sign away every penny she had inherited from him. There is testimony that she said at this time, "I will give everything away. I will give it to my father-in-law. I will give the car to little Joe." It is to be wondered at that at such a time she should have used these expressions, if she did use them. What did property mean to her then when the one she loved had just died? Her father-in-law told her that all would be well, that she could live in the house as long as she wished, that her husband had borrowed the money for its purchase from him and really did not own it.
This and more may all be so, but I still think that this woman, under these circumstances, was in no condition to come to a rational conclusion as to the disposition of her property. This is especially so when we realize that until she had divested herself of all her belongings she was kept in her father-in-law's house. After this they (the in-laws) made no objection to her leaving and said "there would be no hard feelings if she married again." Nor do I think it makes any difference whether or not the father-in-law advanced the money to buy the property. If this be so he could have asserted his claim at a proper time and in a proper way.
It seems almost unnecessary to cite authorities. However, Vice-Chancellor Green has laid down the following rule in the case of Hall v. Otterson, 52 N.J. Eq. 522 (at p. 528);affirmed, 53 N.J. Eq. 695: "In all transactions between persons occupying relations, whether legal, natural or conventional in their origin, in which confidence is naturally inspired, is presumed, or, in fact, reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed and who has acquired an advantage to show, *Page 102 
affirmatively, not only that no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was well understood."
In the case of Slack v. Rees, 66 N.J. Eq. 448,
Chief-Justice Gummere, in the court of errors and appeals, held: "That the absence of such advice will invalidate a deed of gift, which contains no power of revocation, where a relation of trust and confidence exists between the donor and donee, is not denied, and, indeed, it was so held by the vice-chancellor. He seems to have considered, however, that such relationship was not shown, unless it was made to appear that the donee occupied such a dominant position toward the donor as to raise the presumption that the latter was without proper power to assert his will in opposition to that of the donee. But this is not the situation. The rule has a much broader sweep. Its purpose is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee as it is to afford him the protection against the consequences of voluntary action on his part, induced by the existence of the relationship between them, the effect of which, upon his own interests, he may only partially understand or appreciate."
I am satisfied that complainant made the conveyances above mentioned under duress, without independent advice and as the result of fraud.
I will advise a decree directing the surrender or cancellation of the deed to the real estate and the bill of sale for the automobile. *Page 103