This action is brought to set aside deeds of gift covering five tracts of land and a $2,500 mortgage, which were made by Ann Kelly, now deceased, to her daughter, Isabella, the defendant herein. The reasons assigned for their avoidance *Page 484 
are: improvidence, undue influence, lack of competent and independent advice, and the existence of a confidential relationship between the donor and the donee.
The evidence before me discloses that the donor died on September 17th, 1929, at the age of about seventy-nine years, leaving her surviving, Annie M. Harlin, Patrick Kelly and Henry Kelly (complainants herein) and Isabella Kelly (the defendant herein), who were her only children and heirs-at-law. For more than twenty-five years, immediately preceding her death, she, being a widow, earned her livelihood and accumulated her property by keeping a rooming house in one of her properties. In the performance of the duties in connection with the conduct of her said business, as well as of those in and about her own household, she was assisted by the donee, who, alone of all her children, had remained unmarried and continued to make her home with her mother — her sister and two brothers each having married and established their own separate homes, away and apart from that of their mother, for more than eighteen years preceding her death.
The donor was afflicted with various ailments and physical disorders, which, during the last fifteen years of her life, kept her in bed for protracted periods, each of which was of quite frequent recurrence. As time progressed, her sufferings became aggravated to such an extent that, with the exception of but few occasions, she was forced to spend the last five years of her life in bed. Throughout her protracted illness and almost complete helplessness, she received the kindly ministrations and almost constant care and attention of the donee, who at the same time was her companion, nurse and servant as well.
The ravages and progressiveness of her ailments had so sapped her vitality and powers of resistance, that, on July 18th, 1928, she took a turn for the worse, her condition became precarious, and her life was despaired of. It was on this day that the donee, herself, notified her sister, by mail, that their mother "was very sick, and had taken a turn for the worse, and that there was no hope for her." It was under *Page 485 
these circumstances, and while in this condition, that the donor, on July 18th, 1928, executed the deeds in question, conveying all of her property to the donee — completely stripping herself — and thereby changed her condition from one of comparative comfort and affluence, to one of complete poverty and destitution.
On December 29th, 1928, or less than six months thereafter, the donor filed the present bill of complaint, praying that said transfers be set aside because they were procured through fraud and undue influence, without consideration, and without the benefit of competent and independent advice. Due to her disability, her testimony was taken at her bedside on June 4th, 1929, by a special master appointed for said purpose by order of this court. She, however, passed away before the case was concluded. Upon her death being noted, the court, upon their application, ordered the present complainants to be substituted as parties complainant.
The deeds of gift, made and given under the circumstances and conditions hereinabove stated, contained no provision for the donor's support, nor any power of revocation. Although the law does not prohibit such action on the part of the aged and infirm, it, nevertheless, circumscribes same with certain safeguards in order to protect the rights and interests of the donor, especially where the relation, existing between him and the donee, is one of trust and confidence. Before it will sanction or approve of such a gift, that law will demand that it be shown that the donor had the preliminary benefit of competent and independent advice and fully comprehended the legal, as well as the practical, result of his action. It is the settled policy of this state that a court of equity, moved by the apparent improvidence of such a gift, will cast upon the donee the burden of showing that all was fair, open, voluntary and well understood by the donor, after he had received the benefit of competent and independent advice. Haydock v. Haydock, 33 N.J. Eq. 494; Mott
v. Mott, 49 N.J. Eq. 192; Hall v. Otterson, 52 N.J. Eq. 522;Otterson v. Hall, 53 N.J. Eq. 695; Slack v. Rees, 66 N.J. Eq. 447; Post v. Hagan, 71 N.J. Eq. 234; Soper v. Cisco, 85 N.J. *Page 486 Eq. 165; Jacobus v. Waits, 86 N.J. Eq. 148; Clark v. Clark,87 N.J. Eq. 504.
This rule as laid down by all of the authorities is an inexorable one. Nor does this burden, which the law places upon the donee, shift merely because of the donee's verbal promise to support the donor for life, although it was not proven to my satisfaction that any such promise had been made by the donee in this case. The authorities are in accord, and now well settled, that a transfer which would be deemed improvident, if there were no consideration, is not saved from being so by the existence of a mere verbal promise by the donee to support the donor for life.Mott v. Mott, supra; Walsh v. Harkey, 69 Atl. Rep. 726;Siebold v. Zieboldt, 93 N.J. Eq. 327; affirmed, Ibid. 500.
I am fully satisfied from the evidence that the normal relation of mother and daughter, as it had existed before the former's illness and disability, thereafter became reversed, so that the daughter had, in fact, become the confidant, guardian and protector of the mother. This, even the defendant herself does not dispute. In such a situation the law, by reason of the relationship of the parties, presumes that a gift made by the parent to the child is the result and product of undue influence, and, therefore, casts upon the latter the burden of establishing the contrary to be the fact. Slack v. Rees, supra, and the cases therein cited, as well as those following said case.
The defendant, despite her attempt to do so, has in my judgment utterly failed to meet and satisfy the high requirements prescribed by the rule laid down by the authorities, governing gifts or transfers, such as those here involved. As was stated by Chief-Justice Gummere, in Slack v. Rees, supra, "its [the rule] purpose is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee, as it is to afford him protection against the consequences of voluntary action on his part, induced by the existence of the relationship between them, the effect of which, upon his own interests, he may only partially understand or appreciate." *Page 487 
The donor, in substance, testified that she didn't send for Mr. Lee, who drafted the deeds and before whom they were executed; that she didn't know, nor was it explained to her, that she was conveying all of her property to her daughter, Isabella, nor did she ever tell him that she wanted to do so; that she didn't know what she was signing; that when she was told to give her hand in order to affix her mark, she didn't know what the papers were for but thought that they were in connection with settling her estate preparatory to her death and that she wanted all of her children to share alike in her property.
Mr. Lee, who is a realtor and not a lawyer, testified that when he arrived he found the donor very sick in bed; that she told him that she wanted to convey everything she had to her daughter; that he told her that she would be leaving herself destitute and entirely dependent upon her daughter for support, and advised her against doing it, but that she insisted upon it; that he then wanted her to lay it off until he returned from his trip to Europe, but that she refused, stating that she would be dead by then, and that he too, because of her condition, didn't think she would last much longer; that he then advised her to draw up a will rather than to transfer her property by deeds and an assignment; that she refused to accede to this, stating that she was afraid of wills; that he then prepared the deeds and assignment and had her execute them, while she was so confined.
In my judgment the case at bar strikingly demonstrates the wisdom of the rule, laid down in Hall v. Otterson, supra, and cases following, that "the burden of proof is thrown upon the person in whom the confidence is reposed, and who has acquired an advantage, to show affirmatively not only that no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was well understood."
Considering the donor's testimony, in the light of the surrounding circumstances, as well as the other evidence in the case, I am constrained to the conclusion, to say the least, that the transactions in question were not "well understood" by her. *Page 488 
Moreover, from the testimony adduced before me, it is apparent that these transfers were meant to accomplish the purpose of a will, "without being surrounded by the formal guards which the statute has provided for the execution of a will." This situation, in the language of Mr. Justice Reed, in Haydock v.Haydock, supra, "raised an additional reason why a gift like this should be scanned with circumspection, and why the donee should clearly and convincingly show the validity of its execution."
The rule relative to competent and independent advice is that the burden is upon the donee, where such proof is necessary, to show that such advice was actually given to the donor. Pearce
v. Stines, 79 N.J. Eq. 51; Kelso v. Kelso, 96 N.J. Eq. 354;Grazeano v. Lanuto, 97 N.J. Eq. 182. It nowhere appeared in the testimony of Mr. Lee, nor did the defendant otherwise prove, that he, or anyone else, had advised the donor in respect to the respective functions and purposes of deeds and wills, as well as with regard to the distinctions and differences in their legal effect; nor does it appear that she was advised that by executing the transfers in question she would be placing her property beyond her control and power of recall; which would not be the case, in the event that she disposed of it by will. Nowhere does it appear that she was advised that it would be wise to incorporate in the deeds of transfer a promise on the part of the donee for the donor's support, upon which condition, according to Mr. Lee's own testimony, she said she was making the transfers.
Nor was she advised as to the consequence that might follow in case the property was conveyed by the donee, who thereafter, by reason of change of mind or financial inability, was unwilling to support her. Mr. Lee failed to advise her with reference to the wisdom and advisability of incorporating in these deeds of transfer a power of revocation. For his failure to do so, no reason or excuse appears, nor is any offered. For aught that appears, his failure to do so is undoubtedly attributable to the fact that he was not trained or skilled in the law, and was either unaware of the fact that such a reservation could have been legally embodied in the *Page 489 
transfers, or else was not cognizant of its legal effect if inserted in the deed. In this respect at least — and it is a vital one — he was unqualified and incompetent to advise her. However, be that as it may, in the language of Vice-Chancellor Malens, in Coutts v. Acworth (L.R.), 8 Eq. Cas. 558, and cited with approval in Slack v. Rees, supra, "he not only should have done this, but should have insisted upon inserting in it the reservation to the donor of the power to revoke the gift, unless the donor had distinctly refused to have it done." That he failed to do this is entirely undisputed.
From all of the evidence adduced before me, I am fully satisfied that the donor didn't have the benefit of competent advice, or at least, that character of advice as is contemplated by the rule laid down by all of the authorities in such cases. I will advise a decree in accordance with my views as herein expressed.