The complainant is approximately sixty-nine years of age. On or about April 21st, 1930, she was taken to the West *Page 157 
Hudson Hospital in the town of Kearny, New Jersey, suffering with pneumonia. That illness confined her to the hospital until, on or about, May 15th, 1930. During the early stages of her illness, she was delirious. On April 24th, 1930, three days after her admission to the hospital, she executed and delivered to her daughter, Martha Estelle Martin, the defendant, a deed conveying the premises known as No. 315 Forrest street, Kearny, New Jersey. There was no consideration for the conveyance. On the same day, she also assigned and transferred to her daughter, Martha, her bank account in the North Arlington National Bank, in which there was then on deposit the sum of $6,199.38. She, then, also gave Martha a draft to her order, on the First National Bank and Trust Company of Kearny, New Jersey, for $27.50, which amount was changed to $80.74; that sum being all the money she had on deposit in that bank.
The complainant seeks to set aside the conveyance, and the assignments of the bank accounts.
The complainant was formerly married to one Samuel Friedner, from whom she obtained a divorce sometime in the year 1922. She afterwards cohabited, and contracted a common law marriage, with her present husband, James Taylor. On June 30th, 1937, she and Taylor went through a religious ceremonial marriage. The defendant Martha is a child of complainant's marriage with Samuel Friedner. The complainant says that her common law marriage to her present husband took place prior to April 24th, 1930, the day she conveyed the premises to her daughter. I find such to be the fact. The complainant's alleged husband, James Taylor, did not join with her in the execution of the deed.
The deed was prepared by the counsel of the Kearny National Bank, upon instructions from Martha, the defendant. An attorney, associated with the bank's counsel, brought the deed to the complainant, who was then ill in the hospital. He testified that he spoke at some length to the complainant who "was a sick woman;" but she, in his opinion, was "not too sick." The deed was then executed and acknowledged before him by the complainant. *Page 158 
The conveyance, and the assignments were improvident; they stripped the complainant of all her assets. There is no evidence to show that the complainant received any independent advice at the time of the transactions. The attending attorney then merely explained the contents of the deed to the complainant. That appeared to be the extent of his employment.
The medical and other evidence is quite clear that at the time the complainant signed the deed she was very sick; and that a few days before the signing of the deed, and for several days thereafter, she was very ill and delirious. The attending physician, Doctor Toye, said it was his "definite recollection" the complainant was not in a condition to execute the deed; and that she did not then have full knowledge of what she was doing. While the doctor's testimony as to the complainant's illness is convincing, still, I am also satisfied that the testimony of the attorney who took the complainant's acknowledgment to the deed, is not exaggerated. I have faith in his integrity. It was an expression of his belief, based on his observations — the observations of a layman who is not skilled in the science of medicine, or in a thorough knowledge of the physical or mental ailments of mankind. He found the complainant coherent and competent, able and willing to undertake the execution of the written instrument. None but he and she were present at the time. His testimony of what took place at the complainant's bedside, at the time the deed was signed, stands uncontradicted. Loveridge
v. Brown, 98 N.J. Eq. 381; 129 Atl. Rep. 131.
The defendant Martha denied any attempt to influence the complainant. She admits, that at the direction of the complainant, she consulted the bank's counsel and gave him instructions about the deed of conveyance. She also testified that the complainant, prior to the time of the conveyance, stated: "I don't think I will get well." In re Smalley, 124 N.J. Eq. 461.
The complainant had faith in Martha's integrity; she trusted her and confided in her. That trust and confidence, thus reposed, warranted the tender of independent advice to the complainant before she executed the deed and assignments. But none was given or offered. *Page 159 
It does appear that the defendant Martha sometime during the year 1936, caused the complainant's name to be added, as a joint tenant, to the bank account in which was deposited the moneys which she had received from her mother, by the assignments of the two bank accounts. She frankly stated that she had no interest in the bank accounts; that the moneys represented by those accounts belonged to the complainant; and that whatever moneys she withdrew from it, with the exception of $1,375, which was a loan by the complainant to her, she immediately turned over to her mother, the complainant. The evidence shows that the complainant has continued to pay the taxes due on the said premises, the interest due on the mortgage covering it, and the expenses for the upkeep and repairs on the building. She collected and retained all the income from the rents due from the premises.
The facts in the instant case come clearly within the rule enunciated in a long line of cases, among which may be mentionedSlack v. Rees, 66 N.J. Eq. 447; 59 Atl. Rep. 466; Hall v.Otterson, 52 N.J. Eq. 522; 28 Atl. Rep. 907; Haydock v.Haydock, 34 N.J. Eq. 570; Coffey v. Sullivan, 63 N.J. Eq. 296;49 Atl. Rep. 520; Post v. Hagan, 71 N.J. Eq. 234;65 Atl. Rep. 1026; Pearce v. Stines, 79 N.J. Eq. 51; 80 Atl. Rep. 941;Albert v. Haeberly, 68 N.J. Eq. 664; 61 Atl. Rep. 380; Sanford
v. Sanford, 101 N.J. Eq. 485; 138 Atl. Rep. 707; Graziano v.Lanuto, 97 N.J. Eq. 182; 127 Atl. Rep. 109; Hudson Trust Co. v.Murphy, 13 N.J. Mis. R. 375; 178 Atl. Rep. 366; Crowther v.Micucci, 122 N.J. Eq. 81; 192 Atl. Rep. 439; Kelly v. Kelly,107 N.J. Eq. 483; 153 Atl. Rep. 384; In re Smalley, supra.
The complainant abandons the claim for an accounting of the bank accounts, excepting for the sum of $1,275 and interest thereon from June 30th, 1937. This sum, the defendant Martha admits the complainant is entitled to; that being the balance of the moneys retained by her out of the assignments of the bank accounts.
The complainant is entitled to a decree setting aside the deed of conveyance; and she is entitled to the sum last mentioned with interest. *Page 160