A concise narrative of the indisputable facts will serve to introduce the controversial issues. One Luigi Mosconi was born in Italy on October 9th, 1878. He came to America many years ago and obtained employment in the manufacturing plant of John A. Roebling's Sons Co. at Trenton, New Jersey, which occupation he pursued until he was awarded a pension and retired. He had been thrifty and *Page 286 
provident. With his accumulated savings he acquired a dwelling house and group of garages at No. 221 Fulton Street, a dwelling house at No. 118 Pearl Street, and some unimproved real estate on Olden Avenue, all in the City of Trenton. The improved properties were income-producing acquisitions. A group insurance policy issued by the Metropolitan Life Insurance Company to his employer effectuated insurance on his life in the amount of $1,000. He remained unmarried and during the six years immediately preceding his death he occupied a room, and perhaps boarded, in the residence of the defendants. On December 24th, 1938, he designated Carolina Angelini, one of the defendants, as the beneficiary of the insurance policy and on August 25th, 1941, he conveyed by deed, subject to certain reservations, all of his real estate to her. He died on August 26th, 1941, at the age of 62 years, leaving him surviving as his sole heirs-at-law and next of kin, two brothers, Salvatore and Agostino, a nephew, Bernardino Cipriani, and two nieces, Adele Maretti and the complainant, Natalina Campana, all of whom except the complainant, reside in Italy. They have not united with the complainants in the prosecution of this cause. Mrs. Campana is also the administratrix of the decedent's estate.
The complainants seek a decree nullifying the change of beneficiary of the insurance policy and invalidating the conveyance of the real estate. The factual allegations of the bill are (1) that these transfers were made without consideration and were therefore gifts; (2) that a confidential relationship existed between the alleged donor and donee; (3) that the donor was too enfeebled by illness to reasonably understand the nature and effect of his acts; (4) that undue influence was exerted upon him; (5) that he was not afforded the protection of competent, independent advice, and (6) that the deed was intended to be a testamentary disposition of the properties and as such it is ineffectual.
It must be at once acknowledged that the evidence adduced at the final hearing is manifestly insufficient to disestablish the designation of the defendant as the beneficiary of the insurance policy. Significantly, also, it transpired that the *Page 287 
proceeds of the policy had never been made payable to the complainants or either of them, or to the estate of the deceased. Therefore, the cause of action secondly alleged in the bill vanishes.
The remaining cause of action to which most of the evidence relates has not been amply substantiated. The following is a familiar quotation: "The law permits anyone to dispose of his property gratuitously, if he pleases, provided the rights of creditors are not injuriously affected thereby. He may, if he sees fit, reserve to himself the right to revoke his gift, or, if he desires, he may make the gift absolute and irrevocable, and his power in this regard does not depend upon the providence or improvidence of his act." James v. Aller, 68 N.J. Eq. 666;62 Atl. Rep. 427; Fretz v. Roth, 70 N.J. Eq. 764;64 Atl. Rep. 152. Therefore, a deed of gift is not necessarily void or in all circumstances voidable. The deed produced in this cause recites that it was made by the grantor "in consideration of the affection exhibited toward him and the care and attention given him at all times over a period of years" by the grantee.
There are, however, well established principles which are to be applied in respect of transactions between persons occupying relations in which trust and confidence actually or presumptively exist. Haydock v. Haydock's Ex'rs, 34 N.J. Eq. 570; Farmer'sEx'rs v. Farmer, 39 N.J. Eq. 211; Dunn v. Dunn, 42 N.J. Eq. 431; 7 Atl. Rep. 842; Mott v. Mott, 49 N.J. Eq. 192;22 Atl. Rep. 997; Hall v. Otterson, 52 N.J. Eq. 522; 28 Atl. Rep. 907;affirmed, 53 N.J. Eq. 695; 35 Atl. Rep. 1130; Coffey v.Sullivan, 63 N.J. Eq. 296; 49 Atl. Rep. 520; Slack v. Rees,66 N.J. Eq. 447; 59 Atl. Rep. 466; Albert v. Haeberly, 68 N.J. Eq. 664; 61 Atl. Rep. 380; Post v. Hagen, 71 N.J. Eq. 234;65 Atl. Rep. 1026; Pearce v. Stines, 79 N.J. Eq. 51; 80 Atl. Rep. 941;Soper v. Cisco, 85 N.J. Eq. 165; 95 Atl. Rep. 1016; Jacobus v.Waits, 86 N.J. Eq. 148; 97 Atl. Rep. 958; Clark v. Clark,87 N.J. Eq. 504; 101 Atl. Rep. 300; In re Fulper, 99 N.J. Eq. 293;132 Atl. Rep. 834; Kelly v. Kelly, 107 N.J. Eq. 483;153 Atl. Rep. 384; Christian v. Canfield, *Page 288 108 N.J. Eq. 547; 155 Atl. Rep. 788; Dyer v. Smith, 112 N.J. Eq. 126; 164 Atl. Rep. 21.
In such cases, consideration, its adequacy or its absence, although not a conclusive factor, may be a significant element of proof in exposing to view the equitableness of the particular transaction. In re Fulper, supra (at p. 303). To admit this conveyance to that class of transactions, it is incumbent upon the complainants to prove the existence of the requisite, dominant confidential relationship between the grantor and grantee. James v. Aller, supra; Fretz v. Roth, supra; Kelso
v. Kelso, 96 N.J. Eq. 354; 124 Atl. Rep. 763; Wolf v.Palisades Trust and Guaranty Co., 121 N.J. Eq. 385;190 Atl. Rep. 94.
The parties to this conveyance were not relatives. No fiduciary relationship of a technical or legal nature combined them. The grantor entrusted his business affairs, such as the letting of his properties and the collection of rents, to a real estate broker, to whom, also, he seems to have unveiled his personal troubles. It is not disclosed that in his business or general activities, he reposed any inordinate trust in Mrs. Angelini. He was not a person whose mind had been weakened by age or protracted illness. The existence of relations between the grantor and the defendant of such trust and confidence as would normally subordinate his will to her persuasions, must therefore be inferred, if at all, from proof of a few existing circumstances, among which are his lengthy domicile in the home of the defendants, the consequent associations with them, his last illness and its effect upon his mental capacity. Mrs. Angelini undoubtedly gave him necessary care whenever he was ill and probably performed many domestic tasks for him. His situation at the home of the defendants was evidently pleasant and agreeable. He was grateful.
Dominance, however, is implicit in undue influence. That Mrs. Angelini possessed a dominant influence over him — an influence capable of being exercised in his disposition of his property — remains dubious. The evidence tending to place him within the range of an influence which might have so *Page 289 
affected him is noticeably slender. If the confidential relationship out of which undue influence can be presumed is not evidentially shown, there must then be some actual proof of fraud in order to set aside the conveyance. Collins v. Collins,45 N.J. Eq. 813, 820; 18 Atl. Rep. 860.
One cannot always precisely delimit and demarcate the so-called dominant confidential relationship from which a factual presumption of undue influence legally springs. To suppose the requisite relationship to have existed between these parties, will not alter the ultimate decision of this case. Any artificial presumption of undue influence immediately evaporates upon consideration of the evidence. Undue influence is a species of fraud. It must be such as destroys free agency; such as overpowers one's volition and constrains one to do that which one would not otherwise have done. Earle v. Norfolk and NewBrunswick Hosiery Co., 36 N.J. Eq. 188; affirmed, 37 N.J. Eq. 315.
The mere fact that the grantor was actuated by motives of affection, esteem and gratitude for favors received, does not establish the use of that undue influence that the law condemns. The evidence does not impute to Mrs. Angelini the practices of artful flattery, pretended solicitude, subtle insinuations, false enticements or any of the other artifices ordinarily resorted to by those who aim to beguile a trustful and unsuspecting relative or friend. The evidence fails to expose any impropriety in her conduct. Of course, conjectures can be built upon nothing firm but proof must rest upon solid evidence. The allegation of undue influence is not sustained.
The test of mental capacity to make a deed is that a person shall have ability to understand, in a reasonable manner, the nature and effect of the act in which he is engaged and the business he is transacting. Earle v. Norfolk and New BrunswickHosiery Co., supra; Wilkinson v. Sherman, 45 N.J. Eq. 413;18 Atl. Rep. 228; affirmed, 47 N.J. Eq. 324; 21 Atl. Rep. 955;Soper v. Cisco, supra (at p. 169); Turner v. Cole,116 N.J. Eq. 368; 173 Atl. Rep. 613; affirmed, 118 N.J. Eq. 497;179 Atl. Rep. 113; Wolf v. Palisades Trust and Guaranty Co.,supra. *Page 290 
It is not insinuated that the grantor was afflicted with any malady which had progressively debilitated his mentality or that he had yet encountered the debilities of old age. His indispositions were attributable to the hypertrophy of his prostate gland. On the evening of August 23d 1941, the prostatic obstruction and its consequent effects caused him considerable pain. He summoned a physician. Catheterization was the indicated means of relief and although adopted, it was not satisfactorily assuasive. The following day symptoms of uremia became discernible and the physician urgently recommended that the patient be removed to the hospital. This recommendation the patient emphatically and, it is said, unreasonably rejected. During the day, the patient himself removed the catheter, which is characterized as a capricious act.
On the succeeding day (August 25th) Mosconi requested an attorney with whom he was acquainted to visit him. Mosconi imparted to the attorney his desire to have a deed prepared conveying his real estate to Mrs. Angelini, and so drawn as to enable him to retain the possession and income from the properties during his life and to permit Mrs. Angelini, if she so desired, to acquire immediate possession upon paying him $4,000 for the Pearl Street property and $20,000 for the premises situate on Fulton Street. These terms are said to have originated in the mind of Mosconi. He related to the attorney that Mrs. Angelini had been very kind to him for many years. The attorney advised him to execute a will. Mosconi promptly disapproved, expressing his conviction that wills were productive of litigation. The attorney was able to converse in the Italian language and the consultation continued for approximately one hour and a half, during which time the appropriate utilities of a will and a deed were explained to Mosconi. The propriety of retaining the sole and absolute ownership of the properties until death was discussed. Mosconi participated in these discussions but ultimately insisted that the transaction be fully consummated while he was still living and in accordance with his wishes. The deed was accordingly prepared and executed on the forenoon *Page 291 
of that day. It is accompanied by the conventional acknowledgment taken by the attorney.
The only doubt concerning the mental competency of the grantor is generated by the proximity of his act to the time of his death and by the testimony of the attending physician who expressed the opinion that on August 23d and thereafter until his death, the grantor was "irrational." This opinion was not explicated and is primarily based upon the obstinate refusal of the patient to go to the hospital, the unwise removal of the catheter and his oppositive attitude toward the prescribed treatment. To conclude that the grantor was mentally incapable of making the deed and of comprehending the nature and effect of the transaction would necessitate the rejection of the explicit testimony of the attorney, as willfully false and incredible. While this witness manifested eagerness to verify his ethical and cautious conduct in the situation to which he had been called and was undoubtedly interested in aiding the defendants, yet there is no reason arising from contradictory evidence of sufficient positiveness, or from considerations of plausibility and normal experience, to resolve that he conjured up the important significant events to which he testified. An experienced physician, called as an expert, testified in response to hypothetical questions embracing an accurate description of the grantor's condition, that he would ordinarily expect a person in a similar stage of uremia to be mentally capable of reasonably understanding the nature and effect of a transaction such as that in which the grantor engaged. In the existing posture of the evidence, it must be resolved that the grantor possessed the requisite mental capacity to intelligibly make the conveyance.
It is not apparent that the conveyance was improvident in the accepted sense. Pearce v. Stines, supra. The deed by its terms expressly reserved unto the grantor the possession, rents, issues and profits of all the premises therein described for the period of his life. He deliberately retained for himself the income from the real estate, which, together with the pension, were the assurances of his support in the future as they had been in the past. Obviously, he did not by his act *Page 292 
impoverish himself and become dependent upon the benevolence of the grantee or others.
Credence in the testimony of the attorney also inspires the conviction that the grantor actually received independent, disinterested advice on the occasion of his action. Haydock v.Haydock, supra; Post v. Hagan, supra. Evidently, the grantor well understood the significance of his act and its consequences.Mott v. Mott, supra; Hall v. Otterson, supra; Slack v.Rees, supra.
It was assuredly not the intention of the grantor to postpone the effectiveness of the deed until his death. Such an intention cannot be reconciled with the views and instructions he expressed. The deed was immediately delivered and recorded on the day of its execution. Upon its delivery it vested in the grantee title to an estate in remainder in the real estate described.Powers v. Finnerty, 94 N.J. Eq. 193; 118 Atl. Rep. 415.
And so, this panoramic view of the facts persuades me that the grantor became appreciative of the kindness and consideration which had been bestowed upon him by Mrs. Angelini and that the grantor cherished a desire to sometime reward her. An alarming illness overtook him. Its duration or outcome he could not foresee. He became aware of the need of increased care and attention from her. It was, he thought, an auspicious time to display his gratitude. He also contemplated the possibility, however faint, that he might survive this illness. Prudence instructed him to hold fast to the rents. Hence, the deed and its reservations.
 A decree will be advised dismissing the bill. *Page 293