It is from the facts rather than from the established principles of law and equity that the decision of this cause is derived.
The complainant impugns the validity of a deed by which her aunt in her lifetime bestowed upon her fiance, the defendant, the title to certain premises identified as No. 141 Greenland Avenue, Ewing Township, Mercer County. Most of the occurrences surrounding the conveyance seem to be *Page 309 
quite neutral in significance, but the complainant alleges that the transfer was due to the iniquitous and diabolic motives and endeavors of the defendant which were at work beneath the surface of the events.
The specific grounds upon which the complainant seeks to nullify the deed may well be quoted from the brief of her solicitors.
"I. Where there is a confidential relationship between two persons, as where confidence is naturally inspired, is presumed or in fact reasonably exists, as here, and where there is a transfer without consideration of property by the dependent one to the other, it is voidable at the instance of the transferor (or those standing in his stead), if there was any fraud or deception, or any undue influence, or if all was not fair and open, and voluntary, or if the transaction was not thoroughly understood in all its bearings, and in the case of any such transfer there is a presumption against the transferee on all these points, and the burden of proof is cast upon him to show affirmatively that none of these existed. In the case at bar the proofs affirmatively show that there was fraud and deception and that the transaction was not open; the proofs do not show that all was fair and voluntary and thoroughly understood and the defendant has not sustained the burden of proof as to other elements of the rule.
"II. Where there is such confidential relationship, and where without consideration there is an improvident transfer, that is, one which leaves the transferor without adequate or sufficient means of support, by the dependent or weaker one to the other, the transfer is presumed to be void and the burden of proof is cast upon the transferee to show affirmatively that the transferor had the benefit of timely, competent and independent advice, and in the absence of such advice the transfer will be set aside. In the case at bar the transfer was improvident and the proofs show there was no such advice."
I have thoroughly considered the case and the arguments of counsel, and I have arrived at a definite conclusion. It will undoubtedly be more accommodating to the parties and their solicitors for me to announce my decision promptly *Page 310 
rather than to postpone it until I shall have had an opportunity to compose a memorandum comprehensive of the various features of the evidence and of the subsidiary impressions which have guided me to my final conclusion.
The story developed by the evidence in the present case, not unlike that of many other contested cases, is capable of arousing some suspicions and speculative notions, but a court is not at liberty to erect a judicial judgment upon a foundation of imaginary suppositions which may perhaps be purely illusory.
It is my persuasion that this grantor, a widow of fifty-two years of age, and the defendant, a marriageable man of forty-seven years of age, genuinely fell in love. Their mutual agreement to unite in marriage was evidenced by his conventional gift and her acceptance of an engagement ring. The marriage, however, was unfortunately retarded by reason of her unintermitting and persistent illness.
Her expectations of a complete recovery of health were vanishing. When informed of the necessity to return again to the hospital, her thoughts and emotions undoubtedly embraced the hope of future wedlock and happiness, but it is equally probable that apprehensions of a less fortunate fate did not elude her contemplations. So circumstanced she deliberately resolved to make a will and to transfer the title to her automobile and to her residential property to the defendant, her devoted and uxorious companion.
Listen to the provisions of her will. She bequeathed $1,000 to the Ukrainian Church, Trenton, New Jersey; $200 to the pastor of the church for masses; $200 for the maintenance of her cemetery plot; $2,000 to her niece Katherine Poter; $2,000 to her nephew Joseph Howrysko; $500 to her cousin Dorothy Kuch; $500 to her god-child Joseph Maksimow; $500 to her brother-in-law Howard Jacobson; the Chevrolet automobile to the defendant; and the rest and residue of her estate to her sister Anna Howrysko. Joseph Maksimow was nominated as her executor. What about the complainant? The testatrix devised to her the dwelling house at No. 141 Greenland Avenue, together with the furniture and furnishings therein contained, but expressly declared in her will *Page 311 
that "In the event that I am no longer the owner of the aforementioned dwelling house and lots at the time of my death, then I give and bequeath to my niece, Rose Takach (the complainant), the sum of three thousand dollars ($3,000.00)."
The complainant evidently calculating that the residential property at the present market is worth more than the bequest of $3,000, has entertained the aspiration to annul the deed duly executed and delivered by her aunt to the defendant. How quickly after the death of beloved relatives are their recorded wishes sought to be circumvented!
There is not in this case a splinter of credible evidence that the defendant practiced any fraud, deception, or culpable undue influence upon the grantor. Perhaps an engagement to marry is emblematic of a confidential relationship. Kelso v. Kelso,96 N.J. Eq. 354; 124 Atl. Rep. 763. Yet it is not evident that this grantor was a person of a flaccid, gullible, and submissive nature over whom the defendant could or did successfully exert a regnant and dominant influence. It is said that the defendant made no monetary payment for the property. She, the grantor, conveyed her homestead to the defendant in response to the natural impulses of love, perhaps rapture, infatuation, and certainly gratitude for the affectionate and faithful devotion he had conferred upon her during the unhappy days of her continued illness. The mere fact that the grantor was actuated by such motives is not of itself presumptively indicative of the use of fraud, deception, or undue influence in the legal signification.Cf. Campana v. Angelini, 132 N.J. Eq. 285; 28 Atl. Rep.
2d 223.
In this day of materialistic valuations, it is not astonishing to meet an argumentative effort to abnegate the value of love and affection as a valid and credible reason for an otherwise gratuitous transfer or donation by one person to another. Love is without law and in some instances seemingly without reason, but in the absence of some defiling proof I decline to regard it as foul. I do not believe that the defendant pawned his affectionate and loyal devotions for the acquisition of the property. SeeKramer v. Mahneck, 112 N.J. Eq. 137; 164 Atl. Rep. 2. *Page 312 
The testimony of the attending physicians at the hospital dispels all doubt concerning the existing mental capacity of the grantor to fully comprehend the significance and effect of her execution of the deed. Campana v. Angelini, supra (at p.289).
The suggestion that the conveyance was an improvident act is manifestly untenable. The grantor had other relatively substantial resources, and she surrendered the title to her real estate to the man whom she hoped and expected to marry.
I have resolved to advise a decree dismissing the bill.