ANDREW DILL, AND OTHERS,

*vs.*

SUSAN KARCHER, AND OTHERS.

*Kent, Jan. 9, 1918.*

As ground for avoiding a deed from a father, not shown mentally incompetent, to a daughter, it cannot, in the absence of evidence, be assumed he was unduly influenced because he was living with and was taken care of by her, and was old and physically infirm.

Deed of gift from a man eighty-five years old and physically infirm to a daughter with whom he was living of half of his small farm, including the buildings, productive of little net income, reserving a life estate, he having other children with whom he had lived, and who had manifested solicitude for and filial duty towards him, will not be set aside after his death as improvident.

BILL TO SET ASIDE A DEED. The cause was heard on bill, answer, testimony of witnesses heard orally by the Chancellor and exhibits. The facts are sufficiently stated in the opinion.

*William Watson Harrington*, for complainants.

*James H. Hughes*, for defendants.

THE CHANCELLOR. The bill was filed to annul a deed because of undue influence, improvidence and the mental incapacity of the grantor. Philemon Dill, of Kent county, died intestate January 15, 1915, leaving as his heirs at law eight children and three grandchildren, the children of a deceased daughter. Prior to September 25, 1913, he owned a small farm containing about twenty acres, with a dwelling house, stables and other buildings thereon erected. By deed dated September 25, 1913, he conveyed to his daughter, Susan Karcher, wife of Harry Karcher, ten acres part of the farm with the buildings, reserving to himself a life estate in the part so conveyed and retaining title to the balance of the farm. This deed was recorded on September 26, 1913. The consideration stated in the deed was natural love and affection, and a nominal money consideration. On May 29, 1916, five of the children of Philemon Dill filed a bill against Susan Karcher, the

grantee, and her husband, and the other children and the grand-children who did not join as co-complainants.

It was alleged that the making of the deed was induced by fraud and undue influence on the part of the grantee and her husband; that the grantor was physically and mentally incapacitated to make the conveyance, and was at the time an inmate of the home of the grantee and wholly dependent on her and her husband; and that it was improvident, inasmuch as the farm was unproductive of income.

Susan Karcher, the grantee, and her husband, two of the defendants, answered the bill, and the other defendants did not. By the answer the grounds for equitable relief were denied. It was admitted that about September 6, 1911, and about May 20, 1913, Philemon Dill had strokes of paralysis, but alleged that on September 25, 1913, the day when the deed was signed, he was mentally capable of executing it. He was then about eighty-five years of age and blind. It was further alleged by the answer, and shown by proof, that twice before making the conveyance he consulted concerning the making of the deed with legal advisers selected by him, the lawyer first consulted being Albert G. Towers, Esq., of Denton, Maryland, and the other, and the one by whom the deed was drawn, was Thomas C. Frame, Jr., Esq., of Dover, who had for several years been the legal adviser of the grantor as to other matters.

It also appears from the answer that the farm both before and after the conveyance was unproductive of net income beyond the cost and expenses of it in the way of repairs, taxes and the like. It was further alleged in the answer that not only did Philemon Dill fully understand the effect of making the deed, but also afterwards confirmed it, and the making of it was his long settled wish, and that he acted under the independent advice of his own legal counsel to carry out his purpose.

It is a statutory authority which a Court of Chancery has to protect aged persons, not only when mentally infirm, but also from their own improvidence, and from undue influence exerted upon them in dealing with property. While the principles upon which courts act are well settled in this State (*McKnatt, et al., v.*

*McKnatt, et al.,* 10 *Del. Ch.* 392, 93 *Atl.* 367, and cases there referred to), yet each case presents different problems.

It is very clear that there is no ground to impeach the transaction in question. It was not shown that the grantor, Philemon Dill, was mentally incapacitated to make the gift of part of his farm to his daughter. On the contrary his understanding of what he did in pursuance of a predetermined purpose was shown affirmatively. There was no evidence of undue influence exerted by the grantor, or by any one in her behalf. The deed was drawn by his own attorney who had transacted other business for him. The presence of the husband of the grantee in the outer office of the lawyer at the time of the execution of the deed had no bearing on the case, for he took no part in the interview. There was evidence not only of deliberation and a comprehension of the nature of his act in executing the deed, and a determined purpose to do so, but there was also evidence of a later expression of satisfaction with what he had done. It is not to be assumed that because he then lived with his daughter, who took dutiful and proper care of his physical needs, she influenced him unduly, and his age and physical infirmities did not of themselves import a yielding to importunities when there was no evidence of such being exerted.

Neither was it shown that there was any agreement on the part of the grantee to support the grantor, so the case differed from that of *McKnatt v. McKnatt*, where there was such a bargain which was a part of the consideration for the conveyance, and the transaction was annulled even after the death of the grantor because this part of the bargain was not in the deed, or performace of the promise of support otherwise secured to the grantor.

The only ground for relief requiring serious consideration is that of improvidence. Mr. Dill, eighty-five years of age, blind, having had two paralytic strokes, and owning a small farm productive of very little net income, gave part of it to his daughter, reserving a life estate in the part conveyed, on which the buildings were erected and which was the most valuable part of the farm. The whole farm was not worth more than twelve hundred dollars, and the part retained was not worth more than two hundred dollars. The balance of the farm and his life interest in the part conveyed were of little salable value, and so would not have pro-

duced much money for his support. Though as to income he was no worse off after than before the conveyance, still by the conveyance he stripped himself of an opportunity to sell the whole of the unproductive farm in order to realize money for his support in his old age when his powers to earn money were gone. But the grantor was not dependent on his daughter, Mrs. Karcher, the grantee, for support. He had other children with whom he had lived and who had cared for him, and who had manifested an unmistakable solicitude for him and filial duty towards him. It was different with the grantor in the case of *McKnatt v. McKnatt*, who was living with strangers and was without sons and daughters to look out for him. Each case is different from all others.

Judged by the circumstances and the situation which existed when the transaction was consummated, and not as it subsequently eventuated, the conveyance did not show such improvidence as that this Court should set the deed aside. The charge of improvidence is not sustained, and the deed will not after the death of the grantor be set aside, because of a supposed improvidence, where no other ground for so doing exists.

There was no relationship of confidence or trust between the grantee and grantor, such as exists between physician and patient, or between lawyer and client, or even between nurse and patient.

On the whole, therefore, the complainants are not entitled to have the deed annulled, and the bill must be dismissed with costs upon the complainants.

A decree will be entered accordingly.