CHARLES J. TOWNSEND, Guardian for Fannie B. Luff,
Plaintiff,

*vs.*

MARY LOUISE S. TOWNSEND, MARY LOUISE S. TOWNSEND, Executrix
of the Last Will and Testament of William Luff Townsend, Deceased, and Charles J. Townsend,
Defendants.

*Kent County, December 31, 1957.*

*Herman C. Brown* and *W. W. Harrington,* Dover, for Charles J. Townsend as guardian and plaintiff and for Charles J. Townsend, individually, as a defendant.

*George M. Fisher,* Dover and *David F. Anderson,* Wilmington, for defendant, Mary Louise S. Townsend individually and as executrix.

MARVEL, Vice Chancellor: This action seeks the setting aside of a deed executed by Fannie B. Luff. Under the terms of the deed in question, which was executed and acknowledged on December 30, 1954, she conveyed the fee to her farm and home to her now deceased grandson, William Luff Townsend, through whom his widow, the defendant Marie Louise S. Townsend claims an interest in the property so conveyed.

On November 3, 1954, Fannie B. Luff, who was then 86 years of age, suffered a cerebral hemorrhage or stroke following which she spent seventeen days in the hospital and several more days in the home of a friend in Harrington before returning to her farm near West Dover, Delaware to live alone as she had for a number of years prior to her attack. At the time of the signing of the questioned deed the grantor's husband and their only child, a daughter, were dead, and her only close blood relatives were her two grandsons and a great grandson. Before her stroke, though somewhat of a recluse, Mrs. Luff had been interested in books and was a gay and gifted conversationalist. The stroke not only seriously impaired her ability to speak but apparently affected her ability to read.

At her home on December 30, 1954, in the presence of a notary public and another impartial witness, Mrs. Luff executed, acknowledged and delivered a deed which conveyed her ninety three acre farm worth approximately $10,000 to her grandson, William Luff Townsend, subject to the reservation of a life estate in herself. On June 17, 1956, William Luff Townsend died leaving a will under the terms of which the farm was devised for life to his wife, the defendant Mary L. S. Townsend with power in her to sell as executrix, with remainder,

if any, over to his brother, Dr. Charles J. Townsend. On October 13, 1956, Dr. Townsend was appointed guardian for Mrs. Luff and thereafter brought this action to rescind, naming himself a defendant in his individual capacity.

The parties agree that the deed should be set aside if the grantor lacked the mental capacity to understand the nature of the act of conveyance. This is always the first question to be decided in cases such as this when, as here, fraud is not charged, *Jones v. Thompson,* 5 *Del.Ch.* 374; *McKnatt v. McKnatt,* 10 *Del.Ch.* 392, 93 *A.* 367, and *Vincent v. Warrington,* 13 *Del.Ch.* 139, 116 *A.* 129. However, the grantor of a deed is presumably competent and the burden of proving incompetency rests upon the one questioning a deed's validity, *Guest v. Beeson,* 2 *Houst.* 246. Furthermore, the capacity to transfer property must necessarily be evaluated as of the time of the transaction under attack, Vol. 16, *Am.Jur., Deeds* § 85, p. 486, *Vincent v. Warrington, supra,* and *Swain v. Moore,* 31 *Del.Ch.* 288, 71 *A.2d* 264.

The testimony of the witnesses to the execution of the deed in question was to the effect that Mrs. Luff appeared to be mentally competent to make such deed, while only two of the witnesses to her general condition after the stroke testified that the grantor probably lacked such capacity at any time after November 3, 1954.

Following her return home late in November 1954, Mrs. Luff continued to live alone with the help of visiting friends, and while it is apparent that the stroke had seriously affected her ability to speak and perhaps to read, the extent of its effect on her ability to understand and reason is problematical. There is testimony of record which establishes that soon after her stroke Mrs. Luff used the telephone and drew checks. Later, in 1955, she received rent money from her farm tenant. And in taking the stand some two and a half years after her stroke, Mrs. Luff disclosed an ability to comprehend, although she seemed distressed at the turn of events brought about by the death of her grandson, William, and sought to deny them. It is clear, however, that in the period following the stroke she could not sustain a conversation, was unnaturally slovenly, and uninterested in medication or in proper food.

Mrs. Pauline Sudler testified that in her opinion the stroke seriously impaired Mrs. Luff's ability to reason and understand, however, she conceded that Mrs. Luff thereafter recognized her and appeared partially to understand her. In such witness' opinion the grantor did not possess the mental capacity to execute a deed at any time during the two month period following her stroke. While Mrs. Sudler probably saw more of Mrs. Luff than did any other person during such period, she was not present at the time the deed was executed.

Charles J. Townsend, guardian for the plantiff and a doctor of medicine, while conceding that he had only seen the grantor for "a couple of hours" on Thanksgiving Day, 1954 and that he did not see her again until April 1955, took the firm position that his grandmother was incompetent to execute a deed after November 3, 1954 and that there had been very little change in her mental condition since the stroke.

On the other hand, Dr. Mercer, Mrs. Luff's attending physician after her stroke could not say whether or not Mrs. Luff knew exactly what she was doing " * * * at any one given moment * * * ", although he conceded that her judgment was necessarily impaired by the very nature of her illness.

In the light of the presumption of competency the general professional opinion of a necessarily [1] interested party and that of a close friend, when weighed against testimony of the witnesses to the transaction and the opinion of Mrs. Luff's own doctor, do not, in my opinion, prove incapacity at the critical moment.

The notary public, who took the grantor's acknowledgment and witnessed the deed, testified that he was an old friend of Mrs. Luff's, that he read the deed to her and that she appeared to know what she was doing. The other witness to the deed testified that on November 26, 1954, the date of the execution of a power of attorney hereinafter referred to her condition was "all right" and that as well as she could recollect it was the same on the day the deed was executed.

---

1. In a draft of will in evidence Mrs. Luff had expressed an intention that if her grandson William were not alive at her death, her farm should go to the son of Charles J. Townsend.

I conclude that Mrs. Luff, although extremely old and seriously ill on the critical date, was competent to sign the deed under attack. Compare *Tate v. Murphy,* 202 *Okl.* 671, 217 *P.2d* 177, 18 *A.L.R.2d* 892, 902.

Plaintiff makes the further contention that a fiduciary relation existed between the grantor and grantee in that (1) the grantee was the grandson of Fannie B. Luff and had spent his youth with her, (2) that the grantee had the deed in controversy prepared and supervised its execution and delivery and (3) that in latter years the grantee had looked after his grandmother's business affairs and had in fact had her sign a power of attorney in his favor after her stroke. It is charged that under these circumstances a gift will be set aside as the deed was not supported by consideration or at most by the nominal consideration of one dollar.

There contentions center around the fact that a grandson was dealing with his grandmother in matters of property, however. a family relationship is not synonymous with a confidential relation, *Takach v. Radice,* 140 *N.J.Eq.* 308, 54 *A.2d* 188. Furthermore, the mere fact that the grantee had the deed prepared and secured the notary who took the deed acknowledgement does not mean that Mrs. Luff did not exercise her independent judgment in executing the document before witnesses. In reaching a determination as to whether or not Mrs. Luff exerciesd her independent judgment in the transaction under attack it is important to note that Mrs. Luff not only lived alone after her stroke but had so lived for many years before her illness. While her grandson, William, a non-resident of Delaware for a number of years prior to the stroke, had visited his grandmother every few months and had for years helped her in many ways, she was not prior to her illness dependent on him either for guidance in her personal life or for advice in her uncomplicated business affairs. It is also apparent that except for the taking over by the grandson of certain responsibilities following his grandmother's illness, there was no drastic change in their relations following the stroke. As before, he merely continued to see to it, without undue intrusion on her privacy, that she received what she needed in the way of food, electricity, heat and other necessities and comforts.

On November 26, 1954, William Luff Townsend had caused to be drawn and secured the execution by Mrs. Luff of a power of attorney authorizing the drawing of checks by Mr. Townsend on his grandmother's bank account. The purpose of obtaining the power of attorney was not only to enable Mr. Townsend to reimburse himself for payments by him of Mrs. Luffs' back bills but also to enable him to pay her regular bills and to help defray the expenses of her illness. Inasmuch as Mr. Townsend lived in Roanoke, Virginia and was apparently the only relative sufficiently interested in Mrs. Luff's welfare to assume responsibility for her welfare, the obtaining of a power of attorney was a virtual necessity. I am satisfied that Mr. Townsend performed his duties as attorney in fact faithfully and that the obtaining and use of such power was a proper expedient under the circumstances. Significantly, for each check drawn by Mr. Townsend on the grantor's account a bill was presented to the bank cashier to demonstrate the reason for the withdrawal. Admittedly, a semi-state of dependency of the grandmother on her grandson was born out of the necessities of illness, but dependency alone does not create a confidential relation, *Leedom v. Palmer,* 274 *Pa.* 22, 117 *A.* 410. Furthermore, this is not the case of an interloper moving into the home and confidence of a senile person but is rather concerned with a grandson who after the stroke in question maintained more or less the same relations with his grandmother as had previously existed, except as an emergency required him to assume greater responsibility for her welfare.

Finally, it should be noted that insofar as Mr. Townsend over the years caused changes and repairs to be made to his grandmother's property over her formal objection, the existence of a confidential relation is negated. It is apparent from the testimony that Mrs. Luff, a proud person, disliked being patronized by the grandson's furnishing of so-called improvements in her home despite affection for her benefactor. In earlier years the tables were turned, and she had been accustomed to helping him before he achieved some success in business in Virginia and was in a position to reciprocate.

There being a failure of proof of a confidential relation, the question of setting aside the deed on the ground that the grantor did

not act on advice independent of that furnished by the grantee is not reached. The requirement of independent advice attaches only when a confidential relation is proved as a fact and the transaction is one where competent independent advice is considered by the court to be necessary, *Peyton v. William C. Peyton Corp.,* 23 *Del.Ch.* 321, 7 *A.2d* 737, 123 *A.L.R.* 1482.

In conclusion, I am of the opinion that the deed should not be set aside on the grounds of inadequacy of consideration. The evidence clearly sustains a finding that William Luff Townsend was the natural object of his grandmother's bounty. The pertinent terms of a will of Mrs. Luff executed by her on September 22, 1954 are in evidence and the intent there expressed was that William Luff Townsend should have the farm if he were alive at her death. The normal expectation at that time was that the grandmother would predecease her grandson, and an arrangement whereby the seriously ill grandmother reserved to herself a life estate, transferring the fee to her favorite grandson, who had not only substantially modernized the farm house but also provided current necessities, was an entirely normal and fair transaction under the circumstances. Mrs. Luff had come to the aid of her grandson in his youth, and she in turn in her old age had come somewhat grudgingly to accept arrangements made by him for her welfare. The normal expectation was that such arrangements would be continued indefinitely into the future to supplement the grantor's farm income, which is and has been for a number of years, $500 per annum. The transaction was not improvident under the circumstances, *Dill v. Karcher,* 12 *Del.Ch.* 9, 102 *A.* 781.

Here the grantor conveyed land to a favorite relative who had obviously had her interests at heart, and in my opinion the deed should not be set aside, there being no proof of fraud or undue influence on the part of the grantee. In passing it should be noted that the deed in question was promptly recorded in the Recorder of Deeds' office after its execution and delivery.

Plaintiff having failed to satisfy me that the grantor lacked the mental capacity to execute the deed in question, there being no proof

of fraud or the like, or that such a confidential relation existed between the grantor and grantee as to lead to a presumption that undue influence was exerted in connection with the execution of the deed, the relief prayed for in the complaint will be denied.

On notice, an order dismissing the complaint will be entered.