**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:     March 1, 2021
Date Submitted:   November 23, 2020

Dean A. Campbell, Esquire
Law Office of Dean A. Campbell, P.A
110 West Pine Street
P.O. Box 568
Georgetown, Delaware 19947

Daniel F. McAllister, Esquire
Tarabicos Grosso, LLP
100 Commons Blvd.
Suite 415
New Castle, Delaware 19720

RE:   *Kirk Owen Phillips v. Kelly Lee Phillips and Kevin Joseph Phillips*
      C.A. No. 2019-0218 PWG

Dear Counsel:

This dispute centers around a deed of property and whether a mother had capacity, or was unduly influenced by two of her sons, who were remaindermen, when she executed a deed eliminating a third son's remainder interest in the property. Pending before me are three motions: motion to stay, motion to dismiss, and motion for default judgment. I recommend that the Court deny all of the motions. This is my final report.

## I.    Background

On February 28, 1986 Ronald Hiltz and Adelaide Hiltz ("Adelaide") executed a deed conveying property located at Lot Number 2, Rogers Haver, Ocean View, Sussex County, Delaware ("Property") to Adelaide, as a life tenant, and to their sons, Plaintiff Kirk O. Phillips ("Plaintiff"), and Defendants Kelly L. Phillips ("Kelly") and Kevin J. Phillips ("Kevin") (together "Defendants"), as remaindermen.[1]  On September 13, 2017, Adelaide executed a deed ("Delaware Deed") retaining her life interest and Defendants' remainder interest in the Property, but eliminating Plaintiff as a remainderman.[2]  Adelaide died on June 15, 2018.[3]

On March 20, 2019, Plaintiff filed a complaint in this Court ("Delaware Action") against Defendants for rescission of the Delaware Deed, claiming that Adelaide lacked capacity to execute the Delaware Deed and that Defendants exercised undue influence over Adelaide "to deprive and dispossess Plaintiff of

---

[1] Docket Item ("D.I.") 1, Ex. A.  The 1986 deed provided that Adelaide retained full powers and authority to sell, or otherwise dispose, of "an absolute interest" in the Property during her lifetime (except by Will). *Id.*  Although the 1986 deed referred to the Property as in "Rogers Haver," the September 17, 2017 deed referenced the same plot as in the 1986 deed, but as "Rogers Haven." *Id.*, Exs. A, B.  I use first names in pursuit of clarity and intend no familiarity or disrespect.

[2] *Id.,* Ex. B.

[3] *Id.*, ¶ 6.

2

any right, title, or interest in the Property."[4] On April 17, 2019, Defendants filed their answer, and a counterclaim alleging malicious prosecution and bad faith by Plaintiff.[5] Plaintiff filed a motion to dismiss the counterclaim on May 21, 2019.[6] On June 3, 2019, Defendants filed an amended counterclaim ("Amended Counterclaim"), asserting abuse of process, bad faith and malicious prosecution by Plaintiff.[7]

On March 10, 2020, Plaintiff filed a motion for protective order to quash the deposition of Marianne Phillips ("Marianne"), Plaintiff's wife, scheduled for March 12, 2020, for health reasons.[8] Defendants opposed the motion for protective order.[9] At a March 11, 2020 hearing, the Court granted the motion for protective order related to the March 12, 2020 deposition date and ordered that status updates be submitted to the Court every 30 days until Marianne's deposition was taken.[10] Plaintiff's counsel provided a status update on May 4, 2020.[11]

---

[4] D.I. 1, ¶¶ 19-23. Plaintiff also seeks to quiet title to the Property, removing any cloud from Plaintiff's title to the Property. *Id., ¶¶* 27-30.

[5] D.I. 8.

[6] D.I. 9.

[7] D.I. 10.

[8] D.I. 15.

[9] D.I. 16.

[10] D.I. 18.

[11] D.I. 21. On April 17, 2020, Plaintiff sought an extension to file the update, which was granted on April 21, 2020. D.I. 19; D.I. 20.

Receiving no additional update, on October 6, 2020, the Court sent a letter to the parties' counsel indicating that, consistent with the Court's March 11, 2020 Order, a status report should be filed within 10 days.[12]

On October 19, 2020, Defendants moved to dismiss the lawsuit pursuant to Court of Chancery Rule 41(e) for failure to prosecute, and to enter default judgment under Court of Chancery Rule 55(b) on their Amended Counterclaim.[13] On November 18, 2020, Plaintiff filed his response to the motions to dismiss and for default judgment, and a motion to stay the proceedings based on a previously filed lawsuit in Maryland.[14] On November 23, 2020, Defendants filed a consolidated opposition to the motion to stay and a reply to Plaintiff's answer to the motions to dismiss and for default judgment.[15]

## II.    Analysis

### A.    Should this action be stayed pending the Maryland action on *forum non conveniens* grounds?

The first issue is whether this action should be stayed on *forum non conveniens* grounds because of a pending action in Maryland. Plaintiff argues that, under the *McWane* doctrine, the Delaware Action should be stayed pending

---

[12] D.I. 22.

[13] D.I. 23. They also seek an award of attorneys' fees and costs. *Id.*, ¶ 17.

[14] D.I. 25; D.I. 26.

[15] D.I. 27.

judgment in the Maryland action, while Defendants oppose a stay of the Delaware Action.

A *forum non conveniens* motion is addressed to the trial court's sound discretion.[16] "The doctrine of *forum non conveniens* is not a vehicle for the Court to determine which forum would be most convenient for the parties."[17] The Court's *forum non conveniens* analysis "must be informed by the underlying principles of comity and the orderly and efficient administration of justice."[18] Historically, if a dispute is first-filed in Delaware, a Delaware court decided to stay or dismiss the Delaware action in favor of a similar action pending in another jurisdiction, based upon whether the defendant established overwhelming hardship under the "*Cryo-Maid* factors."[19] *Cryo-Maid* factors include "(1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises; (4) whether the controversy is dependent upon the application of Delaware law which Delaware courts more properly should

---

[16] *Cf. Martinez v. E.I. DuPont de Nemours & Co.*, 86 A.3d 1102, 1104 (Del. 2014), *as revised* (Mar. 4, 2014); *Warburg, Pincus Ventures, LP v. Schrapper*, 774 A.2d 264, 269 (Del. 2001).

[17] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crosstex Energy Servs., LP*, 2013 WL 6598736, at *1 (Del. Super. Dec. 13, 2013); *see also Mar-Land Indus. Contractors, Inc. v. Caribbean Petroleum Ref., LP*, 777 A.2d 774, 779 (Del. 2001).

[18] *Adirondack GP, Inc. v. Am. Power Corp.,* 1996 WL 684376, at *6 (Del. Ch. Nov. 13, 1996); *see also Transamerica Corp. v. Reliance Ins. Co. of Illinois*, 1995 WL 1312656, at *6 (Del. Super. Aug. 30, 1995).

decide than those of another jurisdiction; (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive."[20] If the Delaware action was second-filed, however, *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.* ("*McWane*")[21] looked at whether "there is a prior action pending elsewhere, in a court capable of providing prompt and complete justice, involving the same parties and issues."[22] *McWane* favored litigating disputes in the forum in which the first action was filed because "a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing."[23]

"More recent decisions, however, combine the *Cryo-Maid* and *McWane* tests and apply different presumptions depending on a case's procedural posture. Now, Delaware courts apply the *Cryo-Maid* factors to all *forum non conveniens* motions, irrespective of whether there is another pending action and

---

[19] *Gramercy Emerging Markets Fund v. Allied Irish Banks, PLC*, [hereinafter *Gramercy*], 173 A.3d 1033, 1037 (Del. 2017); *Martinez*, 86 A.3d at 1104.

[20] *Mar-Land Indus. Contractors, Inc.*, 777 A.2d at 778; *see also Gramercy*, 173 A.3d at 1036-37 (citing *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964)).

[21] 263 A.2d 281 (Del. 1970).

[22] *Nokia Sols. & Networks Oy v. Collision Commc'ns, Inc.* [hereinafter *Nokia*], 2020 WL 2095829, at *3 (Del. Super. Apr. 30, 2020).

which action was filed first."[24] "What changes is the strength of the presumptions applied. . . . Under *Cryo-Maid*, defendants must establish overwhelming hardship for Delaware courts to grant dismissal. Under *McWane*, Delaware courts have greater discretion in determining whether a stay or dismissal is proper."[25] When actions were filed contemporaneously, "this Court evaluates a motion to dismiss or stay under the established *forum non conveniens* framework, without applying *McWane's* preference for one action over the other."[26]

The first *Cryo-Maid* (and *McWane*) factor I consider is whether, in this instance, there is a pending similar action in another jurisdiction. "Under *McWane*, an action is a 'prior pending' action when 1) the two actions involve similar claims and similar parties, and 2) the first action is in a court capable of doing prompt and complete justice."[27] "In order to determine whether an action is first-filed, the Court must consider the circumstances surrounding both filings."[28]

---

[23] *McWane,* 263 A.2d at 283.

[24] *Progressive Cas. Ins. Co. v. Bowman Trailer Leasing, LLC*, 2018 WL 3853875, at *3 (Del. Super. Aug. 13, 2018); *see also Aranda v. Philip Morris USA Inc.,* 183 A.3d 1245, 1250-51 (Del. 2018) ("As explained in *Gramercy: McWane* draws on *Cryo-Maid*'s factors because both tests are rooted in *forum non conveniens* doctrine.").

[25] *Aranda,* 183 A.3d at 1250-51 (Del. 2018) (citing *Gramercy*, 173 A.3d 1033, 1038 (Del. 2017).

[26] *Nokia,* 2020 WL 2095829, at *3 (Del. Super. Apr. 30, 2020).

[27] *Progressive Cas. Ins. Co. v. Bowman Trailer Leasing, LLC*, 2018 WL 3853875, at *3 (Del. Super. Aug. 13, 2018).

[28] *Nokia,* 2020 WL 2095829, at *4.

On January 16, 2019, Plaintiff filed a petition ("Estate Petition") in the Orphan's Court for Baltimore County seeking to remove Kelly as the personal representative of Adelaide's estate in Maryland.[29] On March 8, 2019, Plaintiff filed a complaint ("Maryland Complaint") in the Circuit Court for Baltimore County, seeking to have a deed ("Maryland Deed") executed by Adelaide on August 16, 2017 declared null and void because she lacked capacity and was unduly influenced by Defendants.[30] The Maryland Deed eliminated Plaintiff as a remainderman of property ("Maryland Property") located at 5208 Wilkins Avenue, Baltimore, Maryland.[31] On July 24, 2019, the Estate Petition and Maryland Complaint (together "Maryland Action") were consolidated.[32] On March 20, 2019, Plaintiff filed the Delaware Action.[33] The Delaware Action was filed seven weeks after the Estate Petition and 12 days after the Maryland Complaint, and is second-filed.

---

[29] D.I. 26, Exs. A, B. The Estate Petition also objects to Adelaide's estate's designation as a small estate, and claims that Kelly failed to disclose all of Adelaide's property when he filed the small estate petition for administration in Maryland. *Id.*, Ex. A, ¶¶ 1, 2. It further alleges that Kelly failed to disclose the circumstances concerning Adelaide's execution of Maryland and Delaware deeds. *Id.*, ¶ 3.

[30] D.I. 26, ¶¶ 14, 21, 22, Exs. C, D.

[31] *Id.*, Ex. C.

[32] *Id.*, Ex. B.

[33] D.I. 1.

Plaintiff argues that the Delaware Action involves the same parties and identical claims related to deeds that, although conveying different properties (one in Maryland and one in Delaware), were executed by Adelaide in the same time period and ended in the same result – the termination of Plaintiff's remainder interests in the properties.[34] He claims that "the risk of inconsistent decisions is a real possibility."[35] Defendants respond that the Delaware Property addressed in the Delaware Action is unique, different from the Maryland Property and tied up with a *lis pendens*.[36]

Delaware courts "have recognized that all claims arising from a common nucleus of operative facts should be brought in the same court at the same time whenever possible."[37] There does not have to be an absolute identity of parties and issues in both actions, but the parties and claims should be sufficiently similar so that the other lawsuit "will substantially adjudicate the claims of the parties."[38]

---

[34] D.I. 26, ¶¶ 11-14.

[35] *Id.*, ¶ 17.

[36] D.I. 27, ¶ 11.

[37] *Transamerica Corp. v. Reliance Ins. Co. of Illinois*, 1995 WL 1312656, at *5 (Del. Super. Aug. 30, 1995); *see also EnVen Energy Corp. v.* Dunwoody, 2020 WL 2770609, at *5 (Del. Ch. May 28, 2020) (citations omitted).

[38] *Transamerica Corp.*, 1995 WL 1312656, at *5.

Here, the parties in the Maryland Action and the Delaware Action are similar.[39] However, I do not find that those actions arise out of a common nucleus of operative facts or are sufficiently similar so that the Maryland Action will adjudicate the claims in the Delaware Action. Both actions allege that Defendants unduly influenced Adelaide to convey Plaintiff's remainder interests in properties to them, and that Adelaide lacked the capacity to deed the properties. The actions, however, involve different properties and the timing and details about the deeds by which Adelaide transferred interests in each property are not similar. The Delaware Deed was executed by Adelaide on September 13, 2017 and appears to have been prepared by a Delaware attorney, while the Maryland Deed was executed by Adelaide on August 16, 2017 and allegedly prepared by Adelaide.[40] Although some evidence may overlap, the factual circumstances surrounding the preparation and execution of the Delaware Deed are key to determining the claims of incapacity and undue influence in the Delaware Action and are distinct from the circumstances pertaining to the Maryland Deed, which occurred more than one month earlier.[41] Since the claims are fact-specific, the risk of inconsistent

---

[39] While the other actions involve all three brothers, the Estate Petition involves only Plaintiff and Kelly, not Kevin. *See* D.I. 1; D.I. 26, Exs. A, C.

[40] D.I. 1, Ex. B; D.I. 26, Ex. C, ¶ 18.

[41] Under Delaware law, a person lacks capacity to transfer property if, at the time that he is conveying the property, "by reason of mental illness or defect (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or (b)

decisions, if both actions proceed at the same time, is not significant. The Maryland court cannot do complete justice because the Maryland Action does not seek the same relief, or address the same claims, as the Delaware Action.[42] In my view, the Maryland Action does not constitute a prior pending action under the *McWane* standard.

Next, I consider the other *Cryo-Maid* factors. Defendants assert that this situation differs from *McWane*, because Defendants are not seeking the stay and are ready, willing and able to litigate in Delaware; there are case dispositive motions pending in this case; Plaintiff waited too long before seeking the stay; Defendants are working with Maryland counsel to prevent duplication of efforts; and it is easier to depose Marianne, a Delaware resident, in Delaware.[43] Plaintiff

---

he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know his condition." *Barrows v. Bowen*, 1994 WL 198724, at *4 (Del. Ch. May 10, 1994) (citation omitted); *see also Townsend v. Townsend*, 137 A.2d 381, 382 (Del. Ch. 1957) ("the capacity to transfer property must necessarily be evaluated as of the time of the transaction under attack"). In addition, to prove undue influence when executing a deed, the evidence must show: "(1) a susceptible grantor; (2) the opportunity to exert influence; (3) a disposition to do so for an improper purpose; (4) the actual exertion of such influence; and (5) a result demonstrating its effect." *Scott v. Scott*, 2013 WL 5298462, at *4 (Del. Ch. Sept. 13, 2013).

[42] A determination that Adelaide lacked capacity or was unduly influenced to execute the Maryland Deed does not necessarily mean she lacked capacity or was unduly influenced when executing the Delaware Deed. And, unlike the Delaware Action, the Maryland Action includes a claim that Adelaide, who was not an attorney, improperly prepared the Maryland Deed. D.I. 26, Ex. C, ¶ 18. In addition, there is an outstanding counterclaim in the Delaware Action, alleging malicious prosecution, bad faith and abuse of power by Plaintiff. D.I. 8.

[43] D.I. 27, ¶¶ 9, 11-13.

argues that the parties in this case have engaged in a *de facto* stay, and moving forward in both cases would be duplicative and wasteful.[44]

Looking at the *Cryo-Maid* factors of relative ease of access to proof, availability of compulsory process for witnesses, and the possibility of the view of the premises, I find that they weigh against granting the stay, since the Delaware Property is located in Delaware, and two of the three parties reside in Delaware and are subject to compulsory process in Delaware.[45] In addition, Defendants are seeking to depose Marianne, who is a Delaware resident.[46] Although some of the witnesses may be in Maryland and their testimony relevant in both actions, efforts can be made to prevent duplicative discovery.[47] The *Cryo-Maid* factor examining whether the controversy is dependent upon the application of Delaware law also favors denial of the motion to stay, since Delaware law applies in this case.[48]

The final *Cryo-Maid* factor "weighs other practical considerations 'that would serve to make the trial easy, expeditious, and inexpensive.'"[49] As discussed

---

[44] D.I. 26, ¶¶ 16, 17.

[45] D.I. 1. ¶¶ 1-4.

[46] D.I. 12; D.I. 13; D.I. 14.

[47] D.I. 27, ¶ 4.

[48] "It is well established that the law of the situs of real property determines the effect of actions involving its ownership." *Hill v. Hill*, 262 A.2d 661, 663 (Del. Ch. 1970), *aff'd,* 269 A.2d 212 (Del. 1970).

[49] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crosstex Energy Servs., LP*, 2013 WL 6598736, at *10 (Del. Super. Dec. 13, 2013) (citation omitted).

above, because the factual issues connected with the claims in both actions are distinct, the risk of a significant waste of judicial resources and the inconsistent resolution of the issues is minimal.  The cost of litigating in Delaware is not cumbersome or extraordinarily expensive, recognizing that Plaintiff chose to litigate in Delaware, and the parties already have Delaware attorneys and are not geographically distant from Delaware.[50]

Finally, an important purpose behind *forum non conveniens* considerations is to prevent a plaintiff's choice of forum being defeated by the other party's subsequent filing of an action in another forum.  Here, Plaintiff filed separate actions in Maryland and in Delaware.  He intentionally filed the Delaware case after the Maryland case "by design."[51]  He is also the party seeking to stay the Delaware action.  This is not a situation where the parties filed competing actions in different jurisdictions – Plaintiff chose both forums, so his choice of forum is being respected.  Almost two years after commencing the litigation in Delaware, he now argues that the Delaware Action should not move forward.[52]

---

[50] Kevin is located in Catonsville, Maryland. D.I. 1, ¶ 3.  Since Adelaide resided in the Maryland Property and the Delaware Deed's notary was from Baltimore County, Maryland it appears likely that most witnesses will be located in either Delaware or Maryland. *See* D.I. 1, ¶¶ 11, 12, Ex. B.

[51] D.I. 26, ¶ 4.

[52] The only justification for a stay offered by Plaintiff that he would not have known at the time he filed the Delaware Action was his assertion that the parties have engaged in a *de facto* stay. *Id.*, ¶ 16.  Defendants respond that the lack of activity reflects Plaintiff's

In summary, I find that the *forum non conveniens* factors weigh against granting a stay of the Delaware Action and recommend that the Court deny Plaintiff's motion to stay.

### B.     Should Plaintiff's complaint be dismissed for failure to prosecute?

Defendants seek dismissal of this case under Rule 41(e) and attorneys' fees and costs, arguing that Plaintiff "filed this action one and a half years ago and has taken no substantial steps whatsoever to prosecute this case," while Defendants have incurred substantial costs and the Property has remained encumbered by the *lis pendens*.[53]  Plaintiff responds that there has been an "informal, unspoken, stay of this action since its initiation," and he has "avoided running-up attorneys' fees and costs for both sides while the exact same issues are litigated in [Maryland]."[54]

Rule 41(e) provides that the Court may, upon its own motion or that of any party, and after reasonable notice, dismiss a case where "no action has been taken for a period of 1 year," "unless good reason for the inaction is given."[55]  "Delaware

---

"year-long effort to avoid [Marianne] giving a deposition." D.I. 27, ¶ 4.  I do not consider the inaction in this case as a *de facto* stay, considering the Court's pending order that monthly status reports should be filed "until [Marianne's] deposition is taken." D.I. 18.

[53] D.I. 23, ¶¶ 1, 2.

[54] D.I. 25, ¶¶ 3, 4.

[55] Ct. Ch. R. 41(e).

trial courts have inherent power to control their dockets,"[56] and Rule 41(e) serves the purpose of ensuring the "orderly administration of the business of [the] Court."[57] If a plaintiff fails to take action to prosecute within a one-year period, then they run "the risk of a dismissal under the Rule" unless good reason for inaction is shown.[58] "In deciding what constitutes 'good reason' the court should balance the reasons for, and length of the delay, against the policy in favor of deciding cases on the merits."[59] The decision to dismiss for failure to prosecute rests in the discretion of the Court.[60]

In this case, Plaintiff has not provided a strong explanation of his activities related to this case in the year and one-half preceding Defendants' filing of their motion to dismiss. During that time, however, Plaintiff did conduct activities in this case (in opposition to Marianne's deposition). And, it appears the Maryland Action is proceeding and that there is some coordination of discovery in both

---

[56] *Solow v. Aspect Res., LLC*, 46 A.3d 1074, 1075 (Del. 2012), *as corrected* (Mar. 19, 2012).

[57] *Michaels v. Lesser*, 275 A.2d 797, 799 (Del. Ch. 1971).

[58] *Id.*; *see also Strougo v. Carroll*, 1991 WL 9978, at *2 (Del. Ch. Jan. 29, 1991) ("Rule 41(e) is a permissive rule and is not intended to bring about dismissal when good reason for the inaction is given.").

[59] *Solow*, 46 A.3d at 1076.

[60] *Cf. George X v. Brittingham*, 2017 WL 2670754, at *1 (Del. Ch. June 21, 2017), *adopted* (Del. Ch. July 10, 2017); *Tooley v. AXA Financial, Inc.*, 2009 WL 1220624, at *2 (Del. Ch. Apr. 29, 2009).

cases.[61]   Plaintiff's argument that there was an "informal stay" in this case, because of the Maryland Action, is unpersuasive and controverted by Defendants' on-going efforts to depose Marianne.[62]  However, balancing those considerations and the length of delay against the policy in support of resolving cases on the merits, I find the circumstances do not warrant dismissing this action under Rule 41(e) and recommend that the Defendants' motion to dismiss be denied.[63]   With the resolution of these motions, the parties are expected to move forward diligently with discovery and other preparation for trial.  To minimize further delay, within 30 days from the date this report is approved by the Court, the parties shall make every reasonable effort to conduct Marianne's deposition, and to submit a proposed pretrial joint scheduling order that provides for trial as soon as schedules permit.

**C.    Should default judgment be entered on Defendants' Amended Counterclaim?**

---

[61] Defendants confirm that they are "working in conjunction with Maryland counsel in order not to reduplicate discovery efforts [between the Maryland Action and the Delaware Action]."  D.I. 27, ¶¶ 4, 12.

[62] *See* n. 52 *supra.*

[63] Defendants rely on *Michaels v. Lessner*, to support dismissal under Rule 41(e). D.I. 23, ¶ 15 (citing *Michaels*, 275 A.2d 797, 799 (Del. Ch. 1971)).  *Michaels* is distinguishable, however.  In *Michaels*, after repeated contact by the Court requesting action in the case over a number of years, the Court concluded that there was "undue delay" by the plaintiffs, without good reason shown, and dismissed the case. *Michaels*, 275 A.2d at 798-99.

Defendants ask the Court to enter default judgment on the Amended Counterclaim, under Rule 55(b), due to Plaintiff's failure to file an answer.[64] Rule 55(b) permits the Court to enter a default judgment when a defendant has failed to appear, plead or otherwise defend as provided by the Court's Rules.[65] The entry of a default judgment under Rule 55(b) is permissive, and the Court has discretion to decide whether to enter a default judgment based on the particular set of facts before it.[66] It is an "extreme remedy," requiring the defendant's "willful or conscious disregard for the rules of the Court," or when the defendant "blatantly fails to appear or plead for a prolonged period of time."[67] Factors to be considering in determining whether to grant a default judgment include: (1) "whether culpable conduct of the defendant led to the default; (2) whether the defendant has a meritorious defense; and (3) whether the plaintiffs will be prejudiced."[68]

---

[64] D.I. 23, ¶¶ 4, 14.

[65] Ct. Ch. R. 55(b); *see also Tabb v. Bank of New York Mellon*, 2017 WL 2570020, at *1 (Del. Ch. June 14, 2017); *New Castle Shopping, LLC v. Penn Mart Disc. Liquors, Ltd.*, 2009 WL 5197189, at *2 (Del. Ch. Oct. 27, 2009).

[66] *Cf. New Castle Shopping, LLC*, 2009 WL 5197189, at *2; *Greystone Digital Tech., Inc. v. Alvarez*, 2007 WL 2088859, at *2 (Del. Ch. July 20, 2007).

[67] *New Castle Shopping, LLC*, 2009 WL 5197189, at *2 (citations omitted).

[68] *Newsom v. Biden*, 2011 WL 835135, at *3 (Del. Ch. Feb. 28, 2011); *see also Apartment Communities Corp. v. Martinelli*, 859 A.2d 67, 69-70 (Del. 2004).

Here, Plaintiff filed a motion to dismiss Defendants' original counterclaim alleging malicious prosecution and bad faith by Plaintiff.[69] Defendants subsequently filed the Amended Counterclaim, which added an abuse of process claim.[70] Plaintiff has not filed an answer to the original or Amended Counterclaim. He asserts that he does not need to respond because the Defendants were required, under Court of Chancery Rule 15(a), to obtain his consent or "leave of Court" before filing the Amended Counterclaim.[71] His argument is unpersuasive. Under Rule 15(a), a party may amend a pleading "once as a matter of course at any time before a responsive pleading is served."[72] Plaintiff's motion to dismiss the counterclaim did not serve as a responsive pleading, so Defendants filed the Amended Counterclaim before any responsive pleading had been filed.[73] Plaintiff needs to file a response to the Amended Counterclaim. However, Defendants have not shown prejudice that has resulted from Plaintiff's failure to respond to the Amended Counterclaim. Although Plaintiff has been remiss in his failure to respond to the Amended Counterclaim, I consider that his motion to dismiss the original counterclaim remains pending, and rely on the general preference for

---

[69] D.I. 9.

[70] D.I. 10.

[71] D.I. 25, ¶¶ 10, 11.

[72] Ct. Ch. R. 15(a).

resolving cases on the merits, in declining to impose the "extreme remedy" of default judgment, at this juncture. I recommend that the Court deny Defendants' motion for default judgment on the Amended Counterclaim. Plaintiff shall respond to the Amended Counterclaim within 15 days of the date this report is approved by the Court.

## III. Conclusion

For the reasons set forth above, I recommend that the Court deny Plaintiff's motion to stay this action pending judgment in a Maryland action on *forum non conveniens* grounds. I also recommend that the Court deny Defendants' motions to dismiss under Rule 41(e) and for default judgment under Rule 55(b). Within 30 days from the date this report is approved by the Court, the parties shall make every reasonable effort to conduct Marianne's deposition and to submit a proposed pretrial joint scheduling order that provides for trial as soon as schedules permit. In addition, Plaintiff shall respond to the Amended Counterclaim within 15 days of the date this report is approved by the Court. This is a final report and exceptions may be taken under Court of Chancery Rule 144.

/s/ Patricia W. Griffin
Master Patricia W. Griffin

---

[73] *See R. Keating & Sons, Inc. v. Huber*, 2020 WL 975435, at \*3 (Del. Super. Feb. 27, 2020); *Stoppel v. Henry*, 2011 WL 55911, at \*3 (Del. Super. Jan. 4, 2011).